COMMONWEALTH of Pennsylvania, Appellee

v.

Anthony COLLINS, Appellant.

Superior Court of Pennsylvania.

Argued May 14, 2013.
Filed June 28, 2013.

Samuel C. Stretton, West Chester, for appellant.

Grady J. Gervino, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., LAZARUS, J., and COLVILLE, J.*

OPINION BY LAZARUS, J.

Anthony Collins appeals from his judgment of sentence imposed in the Court of Common Pleas of Philadelphia County after he was found guilty of two counts of first-degree murder,[1] criminal conspiracy,[2] and possessing an instrument of crime ("PIC").[3] Upon review, we affirm.

The Honorable M. Teresa Sarmina set out the facts in her opinion:

On May 18, 2006, just before 11 p.m., Johnny Harmon ... and Latoya Bostic ... were shot multiple times while sitting inside ... Harmon's truck on the 1200 block of Dover Street in Philadelphia. [In] 2006, ... Harmon and his best friend whom he had known for 20 years, Nathaniel Dowling, were selling PCP together on the 1200 block of Dover Street. Neither of them [were] affiliated with anyone else ... dealing drugs either on that block or on neighboring blocks.... [D]uring this time period ... Dowling and ... Harmon were having problems with neighboring drug dealers on "Thompson and Hollywood," which is a "block over" from where Dowling and ... Harmon sold their drugs. [Defendants Anthony Collins and Malik Collins] were part of [a] group of individuals who were known to be present on the Hollywood Street corner and were known to sell drugs there. One week prior to the shooting, while Dowling was wrapping up his drug dealing for the night, two [men] had come over to him and told him to get on the ground and shot at Dowling as he ... ran away. Dowling observed these two individuals run towards Hollywood Street.

Dowling recalled that, on the day of the murders, he had stopped his car in front of a bar at 30th and Stiles Streets and saw Antoine Collins, Anthony Collins' brother, standing outside. As Dowling drove off he saw Antoine make a phone call and, a short time later ... Harmon was shot. After leaving the bar, Dowling drove to the 1200 block of Dover Street to meet up with ... Harmon.

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 907(a).

The two friends were planning on going out to a club that night. Dowling parked his vehicle on the corner of Thompson and Dover Streets and walked back to the 1200 block of Dover Street, where he encountered [Harmon and Bostic], both of whom were sitting in . . . Harmon's truck. . . . Harmon and Dowling spoke for about five minutes, after which . . . Harmon indicated that he was going to finish speaking with . . . Bostic and then go to [a] club with Dowling. Dowling left . . . Harmon and walked over to 1250 Dover Street where Harmon's niece, Deborah Stackhouse, lived.

Moments after Dowling walked into the 1250 Dover Street residence, he heard numerous gunshots. Dowling got down on the floor and, when the gunshots stopped, he got up, looked out the window, and saw somebody run in front of the window, stop, and backtrack. Dowling identified the person at the window as the co-defendant, Malik Collins, a person whom he had known all his life. Dowling ran out the front door and saw that the co-defendant had a gun in his hand and was running with a second person, whom he recognized as the defendant by the way he ran and his body structure. Dowling ran to his truck to get his gun and ran towards Stiles Street, towards which he had seen the defendants running.

After the gunshots, Ms. Stackhouse had run up to the second floor of her residence and looked out the window; she saw . . . Harmon's truck but did not see him moving. She also saw Dowling run to his truck and retrieve a gun. Unable to find the defendants, Dowling ran to . . . Harmon's truck and saw that his friend had a gunshot wound to the head.

As a police car came up Stiles Street, Dowling ran back to 1250 Dover Street to put his gun inside the residence.

Shortly before the shooting, Elise Hinton, second cousin of the two defendants, saw the two defendants walking around 29th and Thompson Streets and saw co-defendant Malik Collins carrying a gun in his hand. They were headed in the direction of Dover Street. Moments after they had walked by her, Ms. Hinton heard gunshots, but did not see . . . the shooting.

Nine 9mm fired cartridge casings (FCCs) and three [.]40 caliber FCCs were recovered from the scene of the shooting. The three [.]40 caliber FCCs were determined to have been fired from the same firearm although the firearm was never recovered. The 9mm firearm did turn up more than three months later when a search warrant was executed, in an unrelated case, on August 25, 2006, at the location of 1209 Windrim Street in Philadelphia. Through a cross-check, the ballistics expert was able to determine that the nine 9mm FCCs were all fired from the weapon seized during the execution of the search warrant. The individual inside the 1209 Windrim Street residence at the time the search warrant was executed was identified as Emery Hicks. He was also known as Gutterman. A photograph of Gutterman was identified at trial by defense witness Antoine Collins, the defendant's brother and the co-defendant's cousin, as someone he knew.

Trial Court Opinion, 4/24/2012, at 2–4 (citations and footnotes omitted).

Collins was tried with his alleged co-conspirator and cousin, Malik Collins ("Malik"), and found guilty of the above offenses.[4] Over the course of the trial,

---

4.  Malik was found guilty of the same offenses, and has appealed his judgment of sentence to this Court. *Commonwealth v. Collins*, No. 2452 EDA 2011. Malik had his own counsel at trial.

Collins' attorney, Samuel Stretton, Esquire, repeatedly objected to the Commonwealth's solicitation of testimony regarding Collins and Malik's involvement in the drug trade. *See e.g.* N.T. Trial, 8/16/2011, at 113–18, 154–57; N.T. Trial, 8/18/2011, at 8; N.T. Trial, 8/19/2011, at 37–39. Attorney Stretton also moved for a mistrial several times on the same basis, which the trial court denied. N.T. Trial, 8/16/2011, at 122; N.T. Trial, 8/19/2011, at 39. Attorney Stretton also requested a jury instruction from the judge that Hinton's testimony should be received with care and caution. N.T. Trial, 8/22/2011, at 11–12, 39. Judge Sarmina denied the motion. *Id.*

The jury found Collins guilty and, on August 30, 2011, Judge Sarmina sentenced him to consecutive life sentences for each murder conviction, a concurrent 20 to 40 year sentence for the conspiracy conviction, and a concurrent 2½ to 5 year sentence for the PIC conviction. Collins filed post-sentence motions on September 2, 2011, which the trial court denied on January 5, 2012. This timely appeal followed.

Collins raises the following issues for our review:

1.  Were the verdicts of two counts of murder of the first degree, conspiracy and possession of an instrument of crime not supported by sufficient evidence?

2.  Were the verdicts of two counts of murder of the first degree, conspiracy and possession of an instrument of crime against the weight of the evidence?

3.  Did the Assistant District Attorney err in introducing and arguing and did the trial Court err in allowing evidence and argument of unrelated alleged bad acts of Anthony Collins, including prior massive drug sales and drug dealing and alleged membership in an active drug gang named as the Thompson University gang?

4.  Did the Assistant District Attorney err in his opening and closing speeches by referencing . . . Collins' involvement with drug gang members and prior bad acts, by making statements of personal opinion, unfairly tainting and criticizing . . . Collins' lawyer, using inflammatory language, and screaming at the defendant while standing over the defense table?

5.  Did Judge Sarmina err in not charging the jury that the identification of . . . Collins by . . . Hinton should be received with care and caution because of the failure to initially identify, the lengthy delay of three years before making any identification and the fact she was high on drugs?

Appellant's Brief, at 5.

We turn first to the sufficiency of the evidence claim. "[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the [Commonwealth as] verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Stays,* 40 A.3d 160, 167 (Pa.Super.2012) (citations and quotations omitted). Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged was committed by the accused beyond a reasonable doubt. *Id.* The Commonwealth need not establish guilt to a mathematical certainty. *Id.* Finally, this Court "may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." *Id.*

■ A homicide constitutes first-degree murder when it is an intentional killing, defined as "willful, deliberate, and premeditated." 18 Pa.C.S. § 2502(a), (d). Two witnesses, both of whom knew Collins

before the incident, placed Collins at the scene of the crime. Hinton, a cousin to both Collins and Malik, testified she saw them walking towards the scene of the crime immediately before the shooting, and that Malik was carrying a gun. N.T. Trial, 8/17/2011, at 122–25. Dowling testified that he saw both Collins and Malik running from the scene. N.T. Trial, 8/16/2011, at 129–33. Dowling also testified that both Malik and Collins were associated with a rival drug distribution operation, suggesting a motive for killing Harmon.[5] *Id.* at 113–17, 150–57. While defense counsel for both Collins and Malik challenged this testimony on cross-examination, "[i]t is within the province of the jury, as the finder of fact, to decide whether a witness' testimony lacks credibility." *Commonwealth v. Fisher*, 564 Pa. 505, 769 A.2d 1116, 1123 (2001). The jury, finding the testimony credible, could reasonably infer from the evidence presented that Collins was one of the shooters, and that he acted with the requisite intent. Viewing the evidence in the light most favorable to the Commonwealth, the elements for first-degree murder were met. *See Stays*, 40 A.3d at 167. Accordingly, we affirm this conviction.

Conspiracy is defined in relevant part as:

§ 903. Criminal conspiracy

(a) **Definition of conspiracy.** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

(e) **Overt act.** No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903.

Our Supreme Court has explained:

In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. In the case of a conspiracy to commit homicide, each member of the conspiracy can be convicted of first-degree murder regardless of who inflicted the fatal wound.

*Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 920 (2009). (internal citations and quotation marks omitted). Finally, it is longstanding law in Pennsylvania that the "crime of criminal conspiracy does not merge with the completed offense which was the object of the conspiracy." *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886, 886 (1976).

In the instant case, the evidence discussed above also supports a conspiracy conviction. Given that Collins and Malik were seen approaching and fleeing the scene together, there are reasonable grounds from which the jury could infer an agreement. N.T. Trial, 8/17/2011, at 122–25; N.T. Trial, 8/16/2011, at 129–33. Addi-

---

5. The Commonwealth's theory was that Harmon was the target, and that Bostic was killed simply for being in the same vehicle as Harmon when the shooting occurred. N.T. Trial, 8/19/2011, at 150–51.

tionally, although only one gun was recovered, a 9mm and a .40 caliber were used in the shooting. Trial Court Opinion, 4/24/2012, at 4. This strongly suggests two gunmen working together, again suggesting an agreement to commit murder. As the object of the conspiracy was successfully carried out, then the murder itself was the overt act for purposes of the conspiracy statute. 18 Pa.C.S.A. § 903. Therefore, the Commonwealth has proven all elements of conspiracy, and we affirm this conviction.

Possession of an instrument of a crime is "a misdemeanor of the first degree if [a defendant] possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. § 907(a). Given the above discussion of the murder charge, there is sufficient evidence from which the factfinder could infer that Collins possessed a gun with intent to use it in a murder. Accordingly, we affirm this conviction.

■ Collins next challenges the weight of the evidence for each conviction. Our Supreme Court has set forth the following standard of review for claims that the verdict is against the weight of the evidence:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403, 408 (2003) (citations omitted).

Our Supreme Court has commented that "[g]iven the primary role of the jury in determining questions of credibility and evidentiary weight, this . . . extraordinary power vested in trial judges to upset a jury verdict on grounds of evidentiary weight is very narrowly circumscribed." *Criswell v. King,* 575 Pa. 34, 834 A.2d 505, 513 (2003). In the instant case, we see no grounds to upset the determinations of the jury. While the Commonwealth's evidence was circumstantial, it supported guilty verdicts on each crime charged. Collins vigorously challenged the credibility of the Commonwealth's witnesses, but he did not present independent exculpatory evidence that would contradict the verdict nor did he so undermine the Commonwealth's evidence as to render it completely unbelievable. Therefore, the trial court did not abuse its discretion in determining that the verdicts were not so contrary to the evidence as to shock the conscience, and this claim also fails on all three convictions. *Champney,* 832 A.2d at 408.

■ Collins next argues that the trial court erred in allowing considerable testimony implicating Collins and Malik in a drug distribution organization. Our standard of review regarding the admissibility of evidence is an abuse of discretion. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." *Commonwealth v. Weiss,* 565 Pa. 504, 776 A.2d 958, 967 (2001) (citations omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Com-*

*monwealth v. Hoover*, 16 A.3d 1148, 1150 (Pa.Super.2011).

Pennsylvania Rule of Evidence 404 provides in relevant part:

**Rule 404. Character Evidence; Crimes or Other Acts**

\*     \*     \*

**(b) Crimes, Wrongs or Other Acts.**

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

Our Supreme Court has explained:

Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity. The same evidence may be admissible for various legitimate purposes, however, provided that its probative value outweighs the prejudicial effect likely to result from its admission, ... and an appropriate limiting instruction is given. One such evidentiary purpose is ... to demonstrate the defendant's motive for committing the crime charged.

*Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 307 (2002) (citations omitted).

■ In the instant case, the Commonwealth presented evidence that Harmon and Dowling were partners in drug distribution, and that Collins and Malik were involved in a rival drug distribution organization. This evidence was not introduced to show Collins had a propensity to commit murder, but to show motive. Accordingly it was not subject to the prohibition of Pa.R.E. 404(b)(1). We must determine if the trial court properly weighed the probative value of the evidence against potential prejudice. Involvement in an illegal and often violent enterprise such as drug distribution is certainly prejudicial. However, in this case it was also important evidence linking Collins and Malik to Harmon and suggesting a motive for why they would kill him. *See Commonwealth v. Childress*, 452 Pa.Super. 37, 680 A.2d 1184, 1187–88 (1996) (evidence appellant participated in co-defendant's drug organization admissible to show motive for killing member of rival drug organization); *Commonwealth v. Williams*, 541 Pa. 85, 660 A.2d 1316, 1321 (1995) (evidence of motive admissible even where it has no direct bearing on guilt of crime charged). Additionally, Judge Sarmina issued a limiting instruction to the jury that they might only consider the evidence that Collins and Malik were involved in the drug trade for purposes of establishing a motive, as required by *Paddy*. N.T. Trial, 8/22/2011, at 28–29; *Paddy*, 800 A.2d at 307. We find that Judge Sarmina did not abuse her discretion in determining that the probative value of the evidence outweighed any prejudicial effect.

■ Collins next argues that the trial court erred by not granting a mistrial when the Assistant District Attorney ("ADA") allegedly engaged in prosecutorial misconduct. Judge Sarmina thoroughly addressed this issue in her trial court opinion:

[Collins] raises several allegations of trial court error because of the Court's failure to grant a mistrial.... All of these claims are without merit.

"Not every unwise remark made by an attorney amounts to misconduct or warrants the grant of a new trial." *Com-*

monwealth v. Carson [590 Pa. 501], 913 A.2d 220, 242 (Pa.2006). "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." Commonwealth v. Stokes [576 Pa. 299], 839 A.2d 226, 230 (Pa.2003), quoting Commonwealth v. Fisher [572 Pa. 105], 813 A.2d 761, 768 (Pa.2002).

Furthermore, according to the Pennsylvania Supreme Court in Commonwealth v. Chmiel:

> In determining whether the prosecutor engaged in misconduct, courts must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. A remark by a prosecutor, otherwise improper, may be appropriate if it is in [fair] response to the argument and comment of defense counsel. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

[585 Pa. 547] 889 A.2d 501, 543–44 (Pa. 2005).

Finally, a mistrial is granted only under manifest necessity. "Mistrials should be granted only when an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial." Commonwealth v. Johnson [572 Pa. 283], 815 A.2d 563, 576 (Pa.2002) (citations omitted). The trial court is permitted to rectify an event prejudicial to the defendant by means less drastic than granting a mistrial. See Rivera, 715 A.2d at 1148.

[Collins'] first prong of this claim is that the Commonwealth erred by accusing the defense attorneys of "snickering and laughing about drug deals." N.T. 8/19/11 at 160. This, [Collins] argues, tainted the lawyers before the jury. [Collins] is mistaken. The prosecutor did not specifically accuse the defense attorneys of snickering and laughing. The prosecutor said, "You know in the light of day in this courtroom, lawyers might snicker and laugh, but the reality of the streets...." N.T. 8/19/11 at 160. Though the language "snicker and laughter" may have been superfluous to properly convey his point, it is also clear that with this statement the prosecutor was not specifically referring to defense counsel but was speaking in broad terms.

[Collins'] second and third prongs of this claim are that the Commonwealth inflamed the jury by saying that the "defendant mowed down the victim," as well as by approaching defense counsel, pointing at defendants, and "screaming close to the defendants that they shot him and shot him." N.T. 8/19/11 at 160, 185. [Collins'] attorney[ ] objected to this inflammatory language. "The prosecution, similar to the defense, is accorded reasonable latitude and may employ oratorical flair arguing its version of the case to the jury." Commonwealth v. Henry [550 Pa. 346], 706 A.2d 313, 330 (Pa.1997). The statements to which [Collins] objects were properly supported by the evidence and merely characterized that evidence with oratorical flair. It cannot be asserted that the unavoidable effect of the prosecutor's argument was to prejudice the jury.... The mere fact that the prosecutor pointed at [Malik and Collins] in arguing that they were responsible for the killings, did not fix bias and prejudice in the minds of the jury. [Malik and Collins]

had been sitting at the defense table during the entire trial and it was clear that it was they who were being accused. The act of pointing at them did not present any information or evidence to the jury that was outside the record or beyond the scope of what is the normal course of a criminal trial. Thus, this claim is also without merit.

[Collins'] fourth prong of this claim is that the prosecutor erred in giving his personal opinion that Dowling told the truth. N.T. 8/18/11 at 172, 185. The prosecutor in his closing argument did make reference to the testimony of Dowling, and did state that "he told the truth." *Id.* at 172. However, following the closing argument where this statement was made, the Court provided the following curative instruction to the jury:

> Court: Members of the jury, what I will tell you now is I think that there was a reference made, and you heard me tell Mr. Stretton to reserve any additional objections that he had until the conclusion, and one of those had to do with the fact that Mr. Zarallo had referenced Dowling having told the truth when he came in. As I have told you numerous times during the course of the trial, and even during all of the closing arguments, the truth is for you all to decide. The jury will decide whether you believe some, all or none of each witness's testimony, and if you do, how much weight to give that testimony. I had said that repeatedly, and hopefully that is what you take away with you and not any comments that anyone made about who they believe, who they don't believe, who they think was honest, who they don't think was honest. That is your sole province, as they call it.

N.T. 8/18/11 at 189–190. As noted above, the jury is presumed to have followed the instructions of the Court.

*Bridges,* 751 A.2d at 833. With this curative instruction there was no danger of any prejudice to [Collins] and, therefore, the ... allegation of misconduct is devoid of merit.

[Collins'] fifth prong of this claim of is that the prosecutor committed misconduct when he referenced Gutterman even though there was no evidence to support an assertion that there was an association between him and [Collins]. [Collins] is incorrect. ... [T]he prosecutor's argument that Gutterman had an association with [Collins] was a permissible argument based on the fact that the gun that was recovered at his premises was the murder weapon and a link between the two defendants and Gutterman was established when defense witness Antoine Collins, Anthony Collins's brother and the defendant's cousin, identified a photograph of Gutterman. The prosecutor was free to argue that there was a connection between these individuals in light of the identification Antoine made and the murder weapon found in Gutterman's residence.

[Collins'] final three prongs of this claim all involve allegations that the prosecutor engaged in misconduct when he argued to the jury that the killing arose out of an ongoing drug war. N.T. 8/19/11 at 155, 162. This claim is without merit since the prosecutor's comment was permissible, as it revolved around the evidence showing motive for the murder. *Commonwealth v. Stern* [393 Pa.Super. 152], 573 A.2d 1132, 1137 (Pa.Super.1990) (holding that the prosecutor's comments as to drug related violence was permissible where evidence had been presented that drug violence was the motive for the killing). Evidence was presented from which the jury could reasonably have inferred that the violence stemmed from rivalry over drug sales on neighboring blocks.

Dowling testified to his friendship and partnership with ... Harmon, and how they had been selling drugs on the corner of 29th and Dover Streets. Dowling also testified to a rivalry that he and ... Harmon had with [Collins] and other drug dealers in that neighborhood because they were competing for the same customers. Twanda Harmon testified that she had seen [Collins] selling drugs. The prosecutor's argument was a reasonable inference based on the evidence presented and, therefore, [Collins] has failed to establish that the prosecutor engaged in misconduct.

Trial Court Opinion, 4/24/2012 at 23–27. We rely on Judge Sarmina's thorough analysis, and reject Collins' claims of prosecutorial misconduct.

■ Collins, in a related claim, also complains that Judge Sarmina improperly admonished Attorney Stretton. After repeatedly objecting during the Commonwealth's closing arguments, Judge Sarmina told Attorney Stretton "[i]f you are going to make another objection, Mr. Stretton, write it down and I will address it at the end." N.T. Trial, 8/19/2011, at 162. We do not find this to be an admonishment. Rather, Judge Sarmina was reasonably exercising judicial control of the proceedings to ensure an orderly trial after Attorney Stretton's repeated objections interrupted the Commonwealth's closing argument. *See Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181, 1191–92 (1996) (trial court comments to defense counsel were directed to maintaining order and decorum in courtroom, and did not entitle appellant to relief). Attorney Stretton then had an opportunity after closing remarks to make his objections before the jury. Accordingly, we find they did not prejudice the jury against Attorney Stretton or Collins, and this claim also fails.

■ Finally, Collins argues that the trial court erred by not instructing the jury to receive the testimony of Hinton with care and caution, pursuant to *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954).[6] Collins has misapplied *Kloiber* and accordingly is not entitled to relief on this claim.

The *Kloiber* Court held that:

[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820, 826–27 (1954).

The *Kloiber* charge alerts the jury where a witness might be physically incapable of making a reliable observation. This inquiry is distinct from the credibility determination a fact-finder must make. Our Supreme Court has found that even where witnesses were

under the influence of alcohol, the room was dark, they had been awakened from sleep, and the events being observed were confusing ... Appellant's objections relate to the credibility of the eyewitness testimony, not to the actual physical ability of the witnesses to observe.... Accordingly, a *Kloiber* charge was not required.

*Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439, 455 (1995)

Here, Collins asserts that Hinton was high on crack cocaine when she claims she saw Collins and Malik. Appellant's Brief, at 48–49. While Hinton testified she was

---

6. Judge Sarmina did instruct the jury with a *Kloiber* charge regarding Dowling's identifica-

tion of Collins, because he did not see Collins' face. N.T. Trial, 8/22/2011, at 20.

often under the influence of drugs during that period of her life, she said that she was sober when she saw Collins and Malik. N.T. Trial, 8/17/2011, at 141–42. Regardless, as in *Paolello*, potential intoxication is a question that goes to Hinton's credibility and the reliability of the identification she made, not to any inherent limitation she might possess as a witness. Therefore, *Kloiber* is not applicable and the jury was fully capable of assessing this testimony without special instructions.

Collins also argues that Hinton was only testifying in order to secure better treatment for her husband, who was facing charges in federal court. Appellant's Brief, at 48; N.T. Trial, 8/17/2011, at 161–63. This issue is also irrelevant to the concerns of *Kloiber*, again because it involves the credibility of the witness. Attorney Stretton fully cross-examined Hinton about her husband's legal problems, and the jury was therefore able to consider this information in making their credibility determination. N.T. Trial, 8/17/2011, at 161–67. Accordingly, Judge Sarmina did not abuse her discretion in declining to issue a *Kloiber* charge regarding Hinton's testimony.

Judgment of sentence affirmed.