J. S12042/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TROY CALLOWAY, | : | |
| | : | |
| Appellant | : | No. 1738 EDA 2014 |

Appeal from the Judgment of Sentence May 8, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0012040-2012

BEFORE: BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED JUNE 12, 2015**

Appellant, Troy Calloway, appeals from the judgment of sentence

entered in the Philadelphia County Court of Common Pleas following his jury

convictions[1] for conspiracy and possession with intent to deliver a controlled

substance[2] ("PWID"). His appointed attorney, Todd M. Mosser, Esq.

("Counsel"), has filed an ***Anders***[3] petition for leave to withdraw. Counsel

discusses the following issues: the sufficiency and weight of the evidence,

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant proceeded *pro se* at the jury trial.

[2] 18 Pa.C.S. § 903; 35 P.S. § 780-113(a)(30).

[3] ***See Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).

prosecutorial misconduct, and the propriety of Appellant's consecutive aggravated-range sentences. We grant Counsel's petition and affirm the judgment of sentence.

We first summarize the relevant procedural history and review Counsel's petition to withdraw. On November 20 and 21, 2013, this case proceeded to a jury trial, at which Appellant proceeded *pro se* with stand-by counsel. The jury found Appellant guilty of both charges—PWID and conspiracy to commit PWID. Appellant subsequently filed *pro se* motions for arrest of judgment and extraordinary relief. On May 8, 2014, the court imposed two consecutive, aggravated-range sentences of three to six years' imprisonment. In imposing sentences in the aggravated range, the court noted the instant convictions were Appellant's seventh for PWID. The court also denied Appellant's two *pro se* motions.

The following day, the court appointed Counsel to represent Appellant in this appeal. Appellant did not file a post-sentence motion, but on June 5, 2014 filed a *pro se* notice of appeal. Counsel filed a timely notice of appeal on his behalf the following day. The court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant, although represented by Counsel, filed a *pro se* statement setting forth several claims. Counsel subsequently filed a statement, pursuant to Pa.R.A.P. 1925(c)(4), that he intended to file an **Anders** no-merit brief. The trial court issued a statement that it undertook an independent review of the record and agreed with

J. S12042/15

Counsel there were no meritorious issues.  On appeal, Appellant has not filed

a response to Counsel's **Anders** petition nor a *pro se* or counseled brief.

This Court has stated:

> This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the defendant].
>
> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in [**Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009)]. The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and
> >
> > (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> **Santiago**, 978 A.2d at 361.  Counsel also must provide a copy of the **Anders** brief to his client.  Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the [defendant] deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief."

**Commonwealth v. Orellana**, 86 A.3d 877, 879-80 (Pa. Super. 2014)

(some citations omitted).  If counsel complies with these requirements, "we

will make a full examination of the proceedings in the lower court and render

- 3 -

an independent judgment [as to] whether the appeal is in fact 'frivolous.'"
*Id.* at 882 n.7 (citation omitted).

In the instant appeal, Counsel's petition to withdraw avers he has conducted a conscientious review of the transcripts and trial record, believes this appeal is wholly frivolous, and has advised Appellant of this conclusion and his intent to seek withdrawal from representation. Counsel has attached a copy of a letter he sent to Appellant, informing him he may raise any further claims *pro so* or with retained counsel. In the brief submitted to this Court, Counsel summarizes the underlying facts of this case, presented the claims Appellant wishes to pursue, cites relevant law, and discusses why he believes the claims are frivolous. We find Counsel has complied with the requirements of **Santiago**. **See Orellana**, 86 A.3d at 880. We thus examine the record to render an independent judgment as to whether the appeal is wholly frivolous. **See id.** at 882 n.7.

The first issue in Counsel's **Anders** brief is the sufficiency of the evidence.[4] We note the relevant standard of review:

> "[W]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." . . . ["T]he evidence established at trial need not preclude every possibility of innocence and the fact-finder

---

[4] "[A] defendant can challenge the sufficiency of the evidence for the first time on appeal." **Commonwealth v. Gezovich**, 7 A.3d 300, 302 n.2 (Pa. Super. 2010); **see also** Pa.R.Crim.P. 606(A)(7).

is free to believe all, part, or none of the evidence presented."

The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." Additionally, "the entire record must be evaluated and all evidence actually received must be considered."

*Commonwealth v. Watley*, 81 A.3d 108, 114 (Pa. Super. 2013) (*en banc*)

(citations omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014).

With respect to conspiracy, this Court has stated:

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode."

*Id.* at 116 (citations omitted); *see also* 18 Pa.C.S. § 903(a)(1)-(2).

In reviewing a claim of insufficient evidence for PWID, this Court has

stated:

[T]he Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts

and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver.

In Pennsylvania, the intent to deliver may be inferred from possession of a large quantity of controlled substance. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver.

***Commonwealth v. Bostick***, 958 A.2d 543, 560 (Pa. Super. 2006) (citations omitted).

We summarize the evidence adduced at trial. Philadelphia Police Narcotics Strike Force Officer Joseph Domico testified to the following. On September 15, 2012, "a little after" 9:00 a.m., he was conducting undercover surveillance of the area at Somerset and Ormes Streets along with two officers. N.T. Trial, 11/20/13, at 54, 56, 59. They were wearing plainclothes and sitting in an unmarked vehicle. This location was one of "the top three drug corner[s] in Philadelphia for the open air sales of heroin."[5] Around 9:10, Officer Domico observed, from a distance within thirty feet, Appellant, along with a black male later identified as Kyle Thorne, and a Hispanic male, Pedro Muniz. Thorne counted money and gave it to Muniz. Appellant took a packet "from his front hoodie sweat shirt pocket" and handed it to Thorne, who then "placed [it] down the front of his pants." ***Id.*** at 62.

---

[5] N.T., 11/20/13, at 57. Officer Domico testified that at this corner alone, on a daily basis 180 bundles of heroin—with each bundle containing fourteen packets—are sold, representing "close to" $25,000 in sales. ***Id.***

"A short time later, a white male" ("Buyer 1"), approached in a BMW SUV vehicle, exited the vehicle, "yelled over and . . . put up four fingers."[6] Buyer 1 gave Thorne money in exchange "for items [Thorne] removed from [the] front of his pants." *Id.* Buyer 1 then reentered his vehicle and left. Officer Domico relayed this information to backup officers. Police Officer Tracey Cooper, who was serving as backup, testified that two to three minutes after she received information from Officer Domico, she stopped Buyer 1 in his BMW. Officer Cooper further stated Buyer 1, the sole occupant of the vehicle, "discarded . . . through the passenger side window four blue glassine packets inside a clear ziplock packet stamped" "Finlandia." *Id.* at 157.

At 9:20, a male, later identified as Moises Rivera, approached the corner, "engaged in conversation," gave Muniz money, and then "went to [Appellant] who handed him an object." *Id.* at 65. Rivera walked to a gray car parked on the corner, "went down on a knee[,] reached up and placed an object . . . under the bumper of that vehicle." *Id.* Officer Domico testified that over the next ten to fifteen minutes, multiple men and women

> approached both Mr. Rivera and Mr. Thorne, the two people that were making the street sales. [Money] was handed . . . to Mr. Thorne and Mr. Rivera for items that Mr. Thorne took from the front of his pants where he took the earlier bag and Mr. Rivera took from under the bumper of that car [sic].

---

[6] *Id.* at 62. This male was later identified as Giorgi Baubauad.

*Id.* at 66. The alleged buyers "all left westbound" toward train tracks. *Id.* Officer Domico testified it was "very easy" for buyers to "walk right down on the train tracks, use their narcotics," and leave. *Id.* He stated: "Police can't get them because if we're stationed here, [the drug sellers will] see us and immediately shut down." *Id.*

At 9:30, a white male ("Buyer 2") engaged Rivera in conversation and gave him money. Rivera "then went to the bumper of that car that was parked on the corner[,] reached up, retrieved objects from that [sic], placed another object back under that, [and] handed objects to" Buyer 2.[7] Buyer 2 then left. Officer Layton Cornish testified that, upon Officer Domico's order, he stopped Buyer 2 and recovered three clear ziplock packets with "ice cream cone symbols," containing what was later identified as cocaine. *Id.* at 120-21.

Officer Domico further testified to the following. He ordered the arrest of the four males on the corner: Appellant, Thorne, Muniz, and Rivera. "As backup approached . . . from Ormes Street," Appellant "started to walk that way," but when he saw a police car, he walked to an open lot between two houses. *Id.* at 69. Officer Domico testified, "[T]here was a fence about this high [sic]," and Appellant took objects from his pocket, reached over the

---

[7] *Id.* at 67. This buyer was subsequently identified as John Mulholland.

fence, and discarded them into the lot.[8]  Officer Cornish testified that he arrived on scene, saw Appellant "toss" "[s]mall blue objects" over the fence into the yard, and stopped Appellant.  *Id.* at 120, 127.  Officer Tracey Cooper recovered $51 from Appellant's person, and "[f]rom the ground over the fence," "four bundles, fifty-six packets of heroin stamped "'Finlandia'" were recovered.  *Id.* at 92.

Another officer arrested Rivera as he was reaching under the car bumper, and recovered $52 from Rivera and a sandwich baggie "containing twenty-six clear ziplock packets with little ice cream cone stamps," each containing cocaine.  N.T. Trial, 11/21/13, at 26-27.  Officer Domico further testified that packets of cocaine stamped with ice cream cones were recovered from the rear bumper of the car.  N.T., 11/20/13, at 70.  Another officer arrested Muniz and recovered $928 from his front left pants pocket.

Officer Jeremias Lopez testified that he arrested Thorne and recovered $123.  N.T., 11/21/13, at 7-8.  On cross-examination, Officer Lopez testified he did not recover any drugs from Thorne and did not see Appellant give Thorne anything.

Finally, the Commonwealth presented a Narcotics Strike Force officer as an expert witness.  He opined that based on the amount of heroin in the

---

[8] *Id.* at 69, 71, 74.  The Commonwealth described Officer Domico's gesture as "[i]ndicating with the left hand, with the back of the hand facing away from the side of the body and lifting over the head level with the open hand, and then just with a quick hand movement."  *Id.* at 69.

fifty-six packets—a total of 1.657 grams—and the manner of packaging, the packets were intended to be distributed. *Id.* at 50-52 ("If somebody was to buy that on the street in bulk, they would buy it in bulk. They wouldn't buy it packaged like that. . . . It would be [approximately $200] cheaper to buy in bulk form.").

Appellant did not testify, but called Officer Domico back to the stand as his sole witness. In his closing argument, Appellant emphasized, *inter alia*, inconsistencies between Officer Domico's and Officer Cornish's testimony as to what he, Appellant, was wearing at the time of the incident—a brown hoodie versus a black and gray jacket.[9] *Id.* at 97.

In reviewing the evidence in the light most favorable to the Commonwealth, we hold there was sufficient evidence for the jury to find beyond a reasonable doubt that Appellant committed both conspiracy and PWID. *See Watley*, 81 A.3d at 114. Appellant was not a mere bystander to the activity on the drug corner, which, according to Officer Domico, was a high drug area. Instead, all of the evidenced cited above sufficiently created a "web of evidence linking [Appellant] to the alleged conspiracy beyond a reasonable doubt." *See id.* at 116. There was sufficient evidence for the jury to conclude Appellant was in possession of heroin, entered into an

---

[9] In closing argument, Appellant also (1) questioned the ability of an officer, who has supposedly arrested thousands of people, to recall the events from an incident fourteen months earlier; and (2) questioned why no photographs or video was taken during the surveillance.

agreement with others to distribute heroin, aided in the distribution of heroin, and undertook an overt act in furtherance of the conspiracy. ***See*** Pa.C.S. § 903(a); ***Watley***, 81 A.3d at 116; ***Bostick***, 958 A.2d at 560. Thus, we agree with Counsel that this issue is meritless.

The second issue presented in Counsel's ***Anders*** brief is the weight of the evidence. Counsel suggests this issue is waived for Appellant's failure to preserve it in a post trial motion. ***See*** Pa.R.Crim.P. 607(A)(1) (requiring claim that verdict was against weight of evidence to be raised with trial judge orally or in written motion before sentencing or in post-sentence motion), *cmt*. ("The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived."). We disagree, and instead find Appellant raised a weight claim in his pre-sentence *pro se* motion for arrest of judgment. That motion cited discrepancies in the officers' description of his jacket, the inconsistency between testimony that he threw items over the fence and testimony that he "dropped" them, and Officer Cooper's "state[ment] on the record that she . . . was chasing someone before she arrested [Appellant] but never mentioned catching that person." Appellant's Mot. for Arrest of J., 2/10/14, at 3-5. Nevertheless, we find no merit in any weight claim.

This Court has stated:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its

> judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

> [G]iven the primary role of the jury in determining questions of credibility and evidentiary weight, this . . . extraordinary power vested in trial judges to upset a jury verdict on grounds of evidentiary weight is very narrowly circumscribed."

*Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citations omitted); *see also* Pa.R.Crim.P. 607, *cmt*. ("Appellate review of a weight of the evidence claim is limited to a review of the judge's exercise of discretion.").

With respect to the officers' description of Appellant's clothing, we note the following testimony at trial. On direct examination, Officer Domico stated Appellant was wearing a "dark colored" "hooded sweat shirt with a pocket in front." N.T., 11/20/13, at 74. Officer Domico stated the same on cross-examination, and when asked specifically, "What color was this hoodie?", he responded "It was dark. I believed it to be brown." *Id.* at 88. Officer Cornish likewise testified Appellant wore "a dark hoodie." *Id.* at 137-38. Officer Cooper, however, testified that she completed a biographical information report of Appellant while Appellant was in the back seat of her

police vehicle. *Id.* at 169. Officer Cooper's report stated Appellant was wearing a black and gray sweat jacket. *Id.*

However, we consider the officers' additional testimony concerning their observation and identification of Appellant. Officer Domico was conducting undercover surveillance from a car parked across the street, "within thirty feet" of Appellant and the other men. *Id.* at 60. It was sunny, there was nothing obstructing his view, and Officer Domico did not lose sight of Appellant during the surveillance. *Id.* at 60, 61, 85. Officer Cooper, who handcuffed Appellant, identified him at trial. *Id.* at 159, 160. Any discrepancies in the evidence were to be resolved by the jury, which was "free to believe all, part, or none of the evidence." *See Collins*, 70 A.3d at 1251. We resolve Appellant's argument that the officers' characterization of his disposal of the packets—by throwing or dropping—in the same manner. The jury was free to weigh any inconsistencies in the evidence. *See id.*

With respect to Appellant's claim that Officer Cooper was chasing someone else before she arrested him, we note the following. At trial, she testified as follows concerning her response to Officer Domico's directions "to arrest the dealers:"

> I was running up the street to actually go get someone else and [Appellant] was coming back down towards me. Police Officer Cornish actually got to him first. I actually ran past Cornish[,] and Cornish called me back because he didn't have any handcuffs. At that time I handcuffed [Appellant].

N.T., 11/20/13, at 160. Officer Cornish told Officer Cooper he saw Appellant

- 13 -

throw something and pointed to where Appellant threw it. Officer Cooper then recovered "items from the bushes in the grassy area." *Id.* at 161. Officer Cooper did not, however, witness Appellant throwing the items. *Id.*

The jury was free to weigh Officer Cooper's statements that she was "running up the street to . . . go get someone else" and that she did not observe Appellant discarding anything over the fence. *See Collins*, 70 A.3d at 1251; N.T., 11/20/13, at 160. We conclude the jury's verdict does not "shock one's sense of justice," and thus the trial court did not abuse its discretion in denying Appellant's motion for arrest of judgment. *See Collins*, 70 A.3d at 1251. Accordingly, we agree with Counsel that any weight of the evidence claim is meritless.

The third claim in Counsel's *Anders* brief is prosecutorial misconduct. As Counsel points out, this claim is articulated in Appellant's *pro se* 1925(b) as, "Prosecutorial misconduct," without any further explanation. *See* Appellant's Concise Statement at 1. After careful review of the trial transcript, we agree with Counsel that Appellant did not lodge any objections during the Commonwealth's opening and closing arguments or trial proceedings. *See* N.T., 11/20/13, at 41-53; N.T., 11/21/13, at 101-33. We further agree, accordingly, that any claim of prosecutorial misconduct is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) (stating failure to

raise contemporaneous objection to prosecutor's comment at trial waives any claim of error).

The fourth issue in Counsel's **Anders** brief is the propriety of Appellant's sentence. As stated above, the court imposed two consecutive sentences of three to six years' imprisonment, which were in the aggravated-range. Appellant's *pro se* 1925(b) statement stated, "Two (2) consecutive sentences of 3-to-6 years is a violation of the Appellant's Constitutional Rights, which were designed to protect the people from 'cruel and unusual punishment.'" Appellant's Concise Statement of Errors Complained of on Appeal at 2. Although Appellant's claim is vague, to the extent he challenges the consecutive nature and length of the sentences, his claim goes to the discretionary aspect of his sentence. **See Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014). However, Appellant did not raise any such claim before the trial court, either at sentencing or in a post-sentence motion. Thus, we agree with Counsel that Appellant has waived this sentencing claim. **See id.** at 132 (stating right to appellate review of discretionary aspects of sentence is not absolute, and defendant must, *inter alia*, preserve issue at sentencing or in motion to reconsider and modify sentence). Appellant has likewise waived any challenge to the imposition of an aggravated-range sentence. **See Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011).

The last issue presented in Counsel's **Anders** brief is a claim of

ineffective assistance of trial counsel. Appellant's *pro se* Rule 1925(b) statement cited ineffective assistance of pre-trial, court-appointed counsel, Carl Reginald Johnson. We further note that at trial, Appellant proceeded *pro se*, with Patrick Link, Esq., acting as standby counsel. Nevertheless, in this appeal, Counsel correctly notes that generally, a claim of ineffectiveness will not be heard on direct appeal. **See Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013) (holding **Grant**'s[10] general rule—of deferring claims of ineffective assistance of counsel to Post Conviction Relief Act review—remains pertinent law). The trial court did not hear Appellant's ineffectiveness claims, and consequently we do not consider any, without prejudice for Appellant to raise them in a Post Conviction Relief Act[11] proceeding.

After an independent review of the trial record, including the trial and sentencing transcripts, we find no other issues meritorious of relief. Accordingly, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

Counsel's petition to withdraw from representation granted. Judgment of sentence affirmed.

---

[10] **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002).

[11] 42 Pa.C.S. §§ 9541-9546.

J. S12042/15

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2015