J-S13030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERRON LEI JENKINS | : | |
| | : | |
| Appellant | : | No. 460 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 13, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0010633-2019

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                          **FILED: June 14, 2024**

Erron Lei Jenkins ("Jenkins") appeals from the judgment of sentence imposed by the Allegheny County Court of Common Pleas (the "trial court") following his convictions of terroristic threats, simple assault, flight to avoid apprehension, and harassment.[1]  On appeal, Jenkins challenges the weight of the evidence supporting his terroristic threats, simple assault, and harassment convictions.   Because we conclude that the trial court did not abuse its discretion in rejecting Jenkins' weight of the evidence claim, we affirm.

On September 4, 2019, Jai Lynn Williams-Smoot ("Williams-Smoot"), decided to terminate her relationship with her paramour, Jenkins.   N.T.,

---

[*] Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 2706(a)(1), 2701(a)(1), 5126(a), 2709(a)(1).

9/20/2023, at 22. Williams-Smoot asked Jenkins to return her belongings and her dog from Jenkins' mother's residence, where she and Jenkins had been living. *Id.* Jenkins and Williams-Smoot agreed to meet at the Taco Bell in the North Side neighborhood of Pittsburgh. *Id.* Jenkins arrived at the Taco Bell in Williams-Smoot's vehicle. *Id.* Williams-Smoot got into the vehicle and ran errands with Jenkins before going to Jenkins' mother's residence to pack. *Id.* at 25.

After packing her belongings, the two departed the residence and stopped at a gas station. *Id.* at 27. Jenkins then sat in the driver's seat and refused to take Williams-Smoot home or let her out of the vehicle, despite her repeated requests. *Id.* Jenkins stated that he was "kidnapping" her. *Id.* at 28. Subsequently, Jenkins drove the vehicle, making various stops before stopping at another gas station, where a state trooper was present. *Id.* Jenkins threatened to harm Williams-Smoot if she attempted to speak to the trooper. *Id.*

Thereafter, Jenkins drove them to his mother's house and again threatened Williams-Smoot with violence if she made a scene. *Id.* at 30. In his bedroom, Jenkins forced Williams-Smoot to remove her clothes and threatened her with a hammer. *Id.* at 32-33. Jenkins also grabbed Williams-Smoot's face, causing her nose to bleed onto her clothes. *Id.* at 33, 50. Jenkins then fell asleep, and Williams-Smoot retrieved her phone from under Jenkins' pillow to text her mother about her situation. *Id.* at 35.

The next day, Jenkins became aware that the police were looking for him.  ***Id.*** at 37.  Consequently, he forced Williams-Smoot to drive to Washington, Pennsylvania for several hours before returning to his mother's residence, where police responded to the reported kidnapping.  ***Id.*** at 37, 39.  Jenkins fled the residence and police arrested him shortly thereafter.  ***Id.*** at 40.

The Commonwealth charged Jenkins with numerous crimes, including one count each of terroristic threats, unlawful restraint, simple assault, flight to avoid apprehension, and harassment.  The case proceeded to a consolidated jury/non-jury trial, with a jury deciding the terroristic threats, unlawful restraint, simple assault, and flight to avoid apprehension charges, and the trial court deciding the harassment charge.  The jury found Jenkins guilty of terroristic threats, simple assault, and flight to avoid apprehension and not guilty of unlawful restraint.  The trial court then found Jenkins guilty of harassment.  Subsequently, the trial court sentenced Jenkins to an aggregate term of nine to twenty-three months of incarceration, followed by four years of probation.

Jenkins filed a timely a post-sentence motion, asserting, inter alia, that his convictions were against the weight of the evidence.  The trial court denied the motion.  Jenkins timely filed an appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Jenkins presents the following issue for review: "Whether [the trial court] abused [its] discretion in denying [] Jenkins'[] post-sentence motion requesting a new trial where the guilty verdicts for terroristic threats, simple assault, and harassment were against the weight of the evidence?" Jenkins' Brief at 6 (unnecessary capitalization omitted).

According to Jenkins, the trial court misapplied pertinent legal standards in evaluating his weight of the evidence claim as the court ignored inconsistent and vague testimony given by Williams-Smoot on cross-examination and discussed the evidence presented in the light most favorable to the Commonwealth. *Id.* at 19-21. As evidence that the testimony provided by Williams-Smoot lacked credibility, he points to the fact that she did not attempt to flee sooner or to seek help and that there was no evidence indicating he forced his way into the vehicle, threatened her, or used physical force. *Id.* at 21-22. Jenkins additionally asserts that after he and Williams-Smoot returned to his mother's home, she did not attempt to leave—even after Jenkins fell asleep—and left the home with him after he learned the police were looking for him. *Id.* at 22-23. He further highlights inconsistencies in Williams-Smoot's testimony, such as her claim that he made her nose bleed, noting that the only clothing with blood on it was found on a shelf in the bedroom. *Id.* at 22. Jenkins contends that the trial court did not appropriately consider the inconsistencies in Williams-Smoot's testimony, and, as such, the factfinder had to speculate as to what to believe. *Id.* at 23.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

Jenkins fails to recognize the two standards of review, and instead seeks for this Court to reweigh the evidence in his favor and find Williams-Smoot's testimony lacked credibility. It is well settled, however, that the factfinder is "the sole arbiter of the credibility of each of the witnesses," including "questions of inconsistent testimony and improper motive." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citation omitted). Indeed, the factfinder "is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* (citation omitted); *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013) (noting that "any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder") (citation omitted). To that end, the factfinder is free to believe or disregard any part of a witness' testimony. *Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019).

Here, the trial court rejected Jenkins' weight of the evidence challenge, finding Williams-Smoot's testimony was not so vague or inconsistent to be "unworthy of belief." Trial Court Opinion, 9/28/2023, at 8. Although Jenkins believes there were a number of inconsistencies in the Commonwealth's evidence, the trial court was permitted to resolve these inconsistencies in favor of finding that the verdicts were supported by competent evidence; we decline his invitation to reweigh the evidence. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate

- 6 -

court cannot substitute its judgment for that of the finder of fact") (citation omitted); **Commonwealth v. Gilliam**, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor). Moreover, contrary to Jenkins' claim, the trial court did not utilize an incorrect standard in addressing his weight challenge. **See** Trial Court Opinion, 9/28/2023, at 6, 8 (setting forth the proper standard of review for weight challenges).[2] There is simply no support for his claim that the trial court resolved his weight claim by viewing the evidence in the light most favorable to the Commonwealth; to the contrary, the trial court expressly states that in making its determination,

_____

[2] Jenkins also baldly asserts that the trial court "did not address the evidence regarding the *actus reus* of the crimes." Jenkins' Brief at 21. In so arguing, Jenkins attempts to raise a claim challenging the sufficiency of the evidence to support his convictions. **See Commonwealth v. Arias**, 286 A.3d 341, 349 (Pa. Super. 2022) (differentiating between a weight challenge and sufficiency claim and noting in a sufficiency claim, the appellant claims "that there is insufficient evidence to support at least one material element of the crime for which [a]ppellant has been convicted.") (citation omitted). This claim is waived, however, as he not only fails to cite to any pertinent authority to support it, but he did not include this issue in either his Rule 1925(b) statement or his statement of questions involved. **See** Pa.R.A.P. 2119(a) (providing that an argument should be "followed by such discussion and citation of authorities as are deemed pertinent"), 1925(b)(4)(vii) ("Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); 2116 ( "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

it reviewed "all the evidence admitted at trial." Trial Court Opinion, 9/28/2023, at 8.

We conclude the trial court did not abuse its discretion in rejecting Jenkins' challenge to the weight of the evidence to support his convictions. We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/14/2024