J-S49034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHNNY ANDREW MOOSE | : | |
| | : | |
| Appellant | : | No. 74 MDA 2018 |

Appeal from the Judgment of Sentence December 15, 2015
In the Court of Common Pleas of Perry County Criminal Division at
No(s):  CP-50-CR-0000051-2015

BEFORE:   SHOGAN, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 30, 2018**

Appellant, Johnny Andrew Moose, appeals *nunc pro tunc* from the December 15, 2015, judgment of sentence entered in the Court of Common Pleas of Perry County following his conviction on the charge of persons not to possess a firearm, as well as four summary offenses: unlawful taking or possession of game, unlawful devices and methods, unlawful acts concerning licenses, and shooting on or across highways.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: Following his arrest, Appellant, who was represented by counsel, proceeded to a jury trial on September 21, 2015.  At trial, Michael Stoltzfus testified that, on December

---

[1] 18 Pa.C.S.A. § 6105(a)(1) and 34 Pa.C.S.A. §§ 2307(a), 2308(a)(7), 2711(a)(1), and 2504(a), respectively.

---

*   Former Justice specially assigned to the Superior Court.

13, 2014, at around noon, he was outside of his home when he noticed a pickup truck stop at his neighbor's house, which belonged to Appellant's brother. N.T., 9/21/15, at 22, 24. He observed as an individual exited the pickup truck and then, seemingly noticing "something down the road," the individual returned to the vehicle and quickly pulled away. *Id.* at 23, 27. Mr. Stoltzfus watched as the pickup truck drove towards the end of his driveway, but then he was unable to view the pickup truck because it was blocked by an unharvested field of corn. *Id.* at 27. However, Mr. Stoltzfus "could very plainly hear the vehicle…coming to a stop,…and [he] heard the truck door slam." *Id.* at 27-28. Within seconds, he "heard four to five gunshots, they were rifle shots of a large caliber." *Id.* at 28.

Mr. Stoltzfus testified that, at this point, he jogged down to the end of his driveway, and he saw Appellant, who was standing on the driver's side of the pickup truck and leaning over the truck's hood. *Id.* at 29. Appellant was pointing a rifle and aiming at a group of deer that were visible in a nearby open field of harvested corn. *Id.* Mr. Stoltzfus testified the group of deer were running away by the time he arrived at the end of his driveway. *Id.* at 30.

Mr. Stoltzfus testified that, as he approached and was within approximately forty to fifty feet from Appellant, Appellant "opened the driver's side door of the truck, sat the rifle inside on the seat and then he turned towards [Mr. Stoltzfus] and [the two men] talked." *Id.* Specifically, Mr.

Stoltzfus asked Appellant why he was hunting from the side of the road and by his vehicle. *Id.* at 31, 33. Appellant did not admit that his actions were illegal, and Mr. Stoltzfus walked back to his house. *Id.* Mr. Stoltzfus indicated that the rifle had a scope on it but did not have a sling on it. *Id.* at 33. Also, he testified that he noticed shell casings lying on the ground "right beside the truck." *Id.* at 33, 37.

Mr. Stoltzfus testified that, at this point, he was not sure whether Appellant had actually shot a deer; however, as soon as he returned to his house, he contacted the Pennsylvania Game Commission. *Id.* at 34-35. Mr. Stoltzfus indicated that he saw no other vehicles coming or going on the road during this time, and the only other possible hunter he noticed was a person "in the distance…[and] quite a ways off" wearing fluorescent orange "on top of the ridge." *Id.* at 32. He noted that he did not hear any other gunshots other than those to which he previously testified. *Id.* at 35.

Mr. Stoltzfus testified that, the next day, he went for a walk, and he noticed an injured deer in the middle of the open harvested cornfield where he had seen the deer running the previous day. *Id.* at 36. Mr. Stoltzfus did not shoot the deer; however, he returned to his home and contacted the Game Commission. *Id.* at 37-38. When a game officer arrived, he showed him where the deer was located. *Id.*

Mr. Stoltzfus denied that there was "any bad blood between" him and Appellant, and he had no "falling outs" with Appellant's family. *Id.* at 38. Mr.

Stoltzfus confirmed that, although he saw Appellant holding the rifle, leaning across the hood of his pickup truck, and aiming the rifle in the direction of the group of deer, he did not actually see Appellant pull the trigger of the rifle. *Id.* at 43-44.

Officer Scott Hoyer, a deputy wildlife conservation officer with the Pennsylvania Game Commission, testified that, in response to Mr. Stoltzfus's telephone call on December 14, 2014, he went to Mr. Stoltzfus's residence. *Id.* at 45. He indicated that Mr. Stoltzfus took him to the open harvested cornfield where he observed a deer that was injured but alive. *Id.* at 46-47. He noted that he could not tell specifically what injury the deer had sustained but it was unable to stand. *Id.* at 47. Concluding the deer would not be able to recover and that it was the "humane thing to do," Officer Hoyer used his shotgun to "dispatch the animal." *Id.* at 48. He then transported the deer to the Game Commission Office. *Id.*

Officer Stephen Hower, a wildlife conservation officer with the Pennsylvania Game Commission, testified that "the last day of the deer rifle season" was on December 13, 2014. *Id.* at 51. He testified the dispatch center received an initial complaint from Mr. Stoltzfus on December 13, 2014, indicating that an individual had stopped his vehicle in front of the Stoltzfus residence and shot at deer. *Id.* at 53. Officer Hower testified that, under the game and wildlife code, it is illegal to hunt through the use of a motor vehicle. *Id.* at 53. That is, he testified that it is illegal "to alight from a vehicle,

meaning you stop along the road after you see game or wildlife, it's illegal to get out of your vehicle and shoot at the game or wildlife unless you…get 25 yards off the traveled portion of the roadway." *Id.* at 53-54. Thus, he testified that shooting across the hood of a vehicle is illegal. *Id.* at 54.

Officer Hower indicated that, on December 13, 2014, he went to Mr. Stoltzfus's house, spoke with Mr. Stoltzfus, and recovered four spent bullet rounds from the bottom of Mr. Stoltzfus's driveway in the area where Mr. Stoltzfus indicated Appellant had parked his pickup truck. *Id.* at 56, 59. He testified the dirt road in front of Mr. Stoltzfus's house is a public township road, and he observed tire prints in the area where Mr. Stoltzfus indicated Appellant had parked his pickup truck. *Id.* at 52, 59. Officer Hower confirmed that Mr. Stoltzfus identified Appellant as the person he saw holding the shotgun earlier in the day. *Id.* at 60.

Officer Hower testified that he did not go into the open harvested cornfield to determine whether Appellant had shot a deer; however, he confirmed that the dispatch center received a telephone call the next day from Mr. Stoltzfus, who indicated that he had discovered an injured deer in the field. *Id.* at 61. Further, Officer Hower confirmed he asked Officer Hoyer to retrieve the deer. *Id.*

Officer Hower testified he skinned and examined the deer on Monday, December 15, 2014. *Id.* He observed a gunshot wound to the deer's neck, which was inflicted when Officer Hoyer "shot the deer to put it down." *Id.* at

62. He also observed some hemorrhage around the deer's shoulder area, but he was unable to determine whether a bullet caused the wound. *Id.* He testified that he found no bullets in the deer, but it is "very common" for bullets to "zip right through" deer. *Id.*

Officer Hower indicated he sent the spent shell casings to the Pennsylvania State Police Crime Laboratory; however, latent fingerprints could not be developed from the shell casings. *Id.* at 63. He testified the empty shell casings were from a .225 caliber rifle. *Id.*

Moreover, Officer Hower testified that, through his investigation, he determined that Appellant is a person who is prohibited from possessing or using a firearm. *Id.* at 66. Specifically, Appellant has a prior conviction for aggravated assault and the probation department advised him that he was not to possess firearms. *Id.* at 68-69. Further, Officer Hower discovered that Appellant did not have a valid hunting license. *Id.* at 70-71.

Officer Hower testified that about a week after the incident he had a telephone conversation with Appellant. *Id.* at 72. During the conversation, Appellant admitted that he was at the scene on the day in question; however, he denied that he was in possession of or shot a gun. *Id.* at 73. Rather, Appellant told Officer Hower that he was at his brother's house when he heard shots, and he drove in front of the Stoltzfus residence to investigate. *Id.* Appellant confirmed to Officer Hower that Mr. Stoltzfus approached him. *Id.* Appellant also confirmed that he knew he was not allowed to have firearms;

however, Appellant did not admit that he shot a deer on the day in question. *Id.* at 75. After the telephone conversation, Officer Hower located Appellant's vehicle at his brother's residence, and when he looked into the pickup truck to see if there was a gun inside, he did not observe a gun. *Id.* at 77.

Appellant testified that, on December 13, 2014, at approximately noon, he arrived at his brother's house and heard "maybe four or five gunshots up the road…by the end of the field." *Id.* at 90. Appellant indicated he drove up the road to determine who was shooting the gun. *Id.* As he approached the area of the road near the end of the Stoltzfus's driveway, he saw a cloud of dust, but he could not see the color or type of vehicle that was causing the dust. *Id.*

Appellant testified that he stopped his vehicle and looked for evidence; however, he did not observe the shell casings or the deer in the open field. *Id.* at 90-91. He indicated that he was stopped for "maybe eight, ten seconds" when Mr. Stoltzfus approached and asked why he was "road hunting[.]" *Id.* at 91. Appellant testified that he did not have a rifle in his possession at this time, he was not hunting, and he did not put anything into his pickup truck when Mr. Stoltzfus approached him. *Id.* at 91-92.

At the close of all testimony, the jury convicted Appellant on the charge of persons not to possess a firearm, and the trial court found Appellant guilty on the four summary offenses. On December 16, 2015, Appellant proceeded to a sentencing hearing, at the conclusion of which the trial court sentenced

Appellant to forty-eight months to ninety-six months in prison for persons not to possess a firearm. Additionally, the trial court imposed fines for each summary offense.

Thereafter, Appellant filed a post-sentence motion,[2] which the trial court denied by order entered on July 27, 2016. Appellant filed a counseled notice of appeal to this Court on August 24, 2016. However, by *per curiam* order entered on April 12, 2017, this Court dismissed the appeal due to counsel's failure to file a brief. On September 25, 2017, counsel filed a "Motion for Reinstatement of Appeal Rights and Authorization to Appeal *Nunc Pro Tunc*," and by order entered on December 27, 2017, the lower court granted the petition.[3] This counseled appeal followed on January 8, 2018. The trial court

---

[2] The post-sentence motion is dated December 26, 2015, and attached thereto is a certificate of service indicating Appellant's attorney served the motion on the clerk of courts on December 26, 2015. However, the post-sentence motion was not time-stamped by the clerk of courts until February 2, 2016. Moreover, we note that the trial court did not specifically provide Appellant with his post-sentence/appellate rights or determine whether Appellant understood such rights at the conclusion of the sentencing hearing. Thus, we overlook any untimeliness in the filing of Appellant's post-sentence motion. **See** Pa.R.Crim.P. 720 (indicating post-sentence motion must be filed within ten days after the imposition of sentence); **Commonwealth v. Patterson**, 940 A.2d 493 (Pa.Super. 2007) (holding a breakdown to have occurred where trial court filed to advise the appellant of his post-sentence and appellate rights).

[3] Despite Appellant's titling of his petition as a "Motion for Reinstatement of Appeal Rights and Authorization to Appeal *Nunc Pro Tunc*," we note the issue presented therein was cognizable under the Post-Conviction Relief Act ("PCRA"), 42 PaC.S.A. §§ 9541-9546. It is well-settled that the PCRA is intended to be the sole means of achieving post-conviction relief. 42 Pa.C.S.A.

directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

In his first issue, Appellant contends the evidence is insufficient to sustain his conviction for persons not to possess a firearm under 18 Pa.C.S.A. § 6105(a)(1).[4] Specifically, he asserts the evidence is insufficient to demonstrate he possessed, used, or controlled a firearm.

Our standard of review of sufficiency claims is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

_____

§ 9542. Further, any PCRA petition, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545. Here, Appellant filed his petition seeking the reinstatement of his direct appeal rights within one year of the date his judgment became final, and thus, his petition constituted a timely PCRA petition.

[4] Appellant has not presented a sufficiency of the evidence claim with regard to his four summary convictions.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa. Super. 2011) (citation omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sanders*, 627 A.2d 183, 185 (Pa.Super. 1993). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa.Super. 2010) (quotation omitted).

18 Pa.C.S.A. § 6105 relevantly provides the following:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
**(a)Offense defined.--**

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*** 

**(b) Enumerated offenses.--**The following offenses shall apply to subsection (a):

*** 

> Section 2702 (relating to aggravated assault).

18 Pa.C.S.A. § 6105(a)(1), (b) (bold in original).

Accordingly, in the case *sub judice*, in order to convict Appellant under Subsection 6105(a)(1), the Commonwealth was required to prove that Appellant had been convicted of an offense enumerated in Subsection 6105(b) (*i.e.*, aggravated assault under Section 2702) and that he possessed, used, or controlled a firearm in this Commonwealth. **See Commonwealth v. Jemison**, 626 Pa. 489, 98 A.3d 1254 (2014).

Here, Officer Hower testified at trial that Appellant has a prior conviction for aggravated assault and the probation department advised him that Appellant is prohibited from possessing a firearm. N.T., 9/21/15, at 68-69. Appellant concedes in his brief that he has a prior disqualifying conviction for aggravated assault. Thus, we shall proceed to address Appellant's argument that the Commonwealth failed to show he possessed, used, or controlled a firearm in this Commonwealth on December 13, 2014.

In analyzing this claim, and concluding the Commonwealth presented sufficient evidence that Appellant actually possessed the firearm, the trial court indicated the following:

> A witness for the Commonwealth, [Mr. Stoltzfus], testified he saw Appellant's truck parked on the shoulder of the road [on December 13, 2014]. The witness testified that he saw Appellant with a rifle in his possession, leaning across the hood of his truck holding a rifle. The witness described the rifle as having a scope, a wooden stock, and without a sling. The witness, standing 40-50 feet away from [] Appellant, testified to seeing [] Appellant put the rifle in the back of the truck.

Trial Court Opinion, filed 3/15/18, at 3 (citations to record omitted).

- 11 -

We find no error in this regard. Here, the testimonial evidence of Mr. Stoltzfus, which the jury chose to find credible, established that Appellant was in actual possession of the rifle. As noted above, the jury was free to believe all, part, or none of the evidence presented. *See Estepp*, *supra*.

In his next issue, Appellant contends the jury's verdict that Appellant possessed a firearm for purposes of Subsection 6105(a)(1) is clearly against the weight of the evidence.[5] Specifically, he contends "[i]t is very unlikely that damage would not have occurred to the vehicle based upon Mr. Stoltzfus's testimony of where he observed [] Appellant standing after the shots had been fired. Additionally, he never testified that he had smelled gun powder." Appellants' Brief at 22-23. Moreover, Appellant contends that Mr. Stoltzfus testified he heard four or five shots from a "high caliber" rifle; however, Officer Hower did not find significant damage to the deer as one would expect from such a rifle. *Id.* at 22. Accordingly, Appellant suggests that the record as a whole demonstrates that Mr. Stoltzfus's testimony was incredible.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation

---

[5] Appellant presented this issue in his post-sentence motion.

- 12 -

omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert***, ***supra***.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.***

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id.*** at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id.*** (quotation marks and quotation omitted).

Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate

court cannot substitute its judgment for that of the finder of fact"). Here, the jury found credible Mr. Stoltzfus's testimony that he saw Appellant in actual possession of a rifle on December 13, 2014. The jury was free to determine what impact, if any, the condition of the deer and Appellant's pickup truck had in this case. As the trial court indicated, the jury was free to believe the Commonwealth's witnesses and disbelieve Appellant's theories regarding the lack of certain evidence. Trial Court Opinion, filed 3/15/18, at 4. Simply put, the trial court did not abuse its discretion in concluding the jury's verdict is not against the weight of the evidence. **See Talbert**, **supra**.

In his final claim, Appellant contends the trial court erred in failing to bifurcate this matter so that the jury could first determine whether Appellant had, in fact, possessed the rifle without being informed that Appellant had a prior conviction for aggravated assault. That is, Appellant contends the trial court should have held a trial as to possession and then, after the jury made a determination, held a trial as to whether Appellant was prohibited from possessing a firearm due to his prior conviction for aggravated assault. We find this issue to be waived.

In his court-ordered[6] Pa.R.A.P. 1925(b) statement, Appellant presented his sufficiency of the evidence and weight of the evidence claims only. He did

_____

[6] The trial court's order complied fully with Pa.R.A.P. 1925. Specifically, the trial court's order provided Appellant with at least twenty-one days to file a Rule 1925(b) statement, as well as informed Appellant that he was to file the

- 14 -

not include therein his claim of bifurcation, resulting in the trial court not having the opportunity to address the claim. Accordingly, we find Appellant's final issue to be waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2018

---

statement of record and with the trial court. Further, the order specifically informed Appellant that any issues not included in the Rule 1925(b) statement would be deemed to have been waived. The concise statement order was docketed, and a notation on the docket indicates that the order was served on Appellant's counsel on January 9, 2018.