J-S67040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ILUMINADO MARTINEZ | : | |
| | : | |
| Appellant | : | No. 1260 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 24, 2016
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0001409-2016

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED DECEMBER 24, 2019**

Appellant Iluminado Martinez appeals *nunc pro tunc* from the judgment of sentence entered on August 24, 2016, in the Court of Common Pleas of Berks County following his conviction at a non-jury bench trial on two counts of robbery, one count of theft by unlawful taking, one count of receiving stolen property, one count of simple assault, one count of possession of an instrument of crime, one count of possession of a firearm prohibited, and five counts of conspiracy.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows:  Appellant was arrested in connection with the gunpoint robbery of Antonio Pabon, and represented by counsel, Appellant proceeded to a non-jury bench trial on

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3701, 3921, 3925, 2701, 907, 6105, and 903, respectively.

August 24, 2016. The trial court has aptly summarized the evidence and testimony offered at trial as follows:

On December 18, 2015, [Appellant] contacted Antonio Pabon ("the Victim") regarding an estimate for carpet installation at an apartment located in the 1000 block of Tenth Street in the City of Reading. (Notes of Testimony of August 24, 2016 Trial "N.T." at 6-8). The Victim [testified he] arrived at the apartment at approximately 7:00 P.M. and waited in his car until [Appellant] arrived. (N.T. 10-11). When [Appellant] arrived, he unlocked the rear entrance to the apartment. (N.T. 11). As the Victim followed [Appellant] into the apartment through the kitchen, another assailant ran from the living room area and stuck a gun into the Victim's stomach. (N.T. 11). [Appellant] then also pulled a gun and pushed the gun into the Victim's stomach as he rummaged through the Victim's pockets, removing the Victim's cellphone and his car keys. (N.T. 11-12). While [Appellant] was going through the Victim's pockets, both [Appellant] and the other assailant were questioning the Victim as to other money in his possession. (N.T. 12-13). The Victim told [Appellant] that he had money in the glove compartment of his car, whereupon [Appellant] told the Victim to stand against the wall as [Appellant] went out to the car and the other assailant stood watch over the Victim. (N.T. 13). After a short time, the other assailant then exited through the rear door of the building, warning the Victim not to move. (N.T. 13).

After hearing the rear door close, the Victim exited through the front door of the building and proceeded to a bodega store down the street where he notified the store owner that he had been robbed. (N.T. 13-14). The bodega store owner called the police. (N.T. 14). Police arrived with[in] a few minutes and proceeded with the Victim to the alleyway where he had earlier parked and found that his car was still in the driveway. (N.T. 14). Upon arriving at the car, the Victim found that the money, which he confirmed was in the glove compartment just prior to the incident, was now missing. (N.T. 14-15). The Victim testified that he had $500 in his pocket and $7,700 in the glove compartment of his car for a total of $8,200 that was stolen during the incident. (N.T. 27-28).

Officer Wendell Hannaford…responded to the scene at 1035 North Tenth Street in the City of Reading where he spoke with the Victim, whom he described as being upset. (N.T. 35-36). Soon thereafter, Sergeant Jason Linderman of the Reading City Police

Department arrived. Officer Hannaford explained the details of the situation and then Sergeant Linderman left to obtain a photograph of [Appellant] from City Hall.[2] (N.T. 36).

When Sergeant Linderman returned to the scene, the Victim identified [Appellant] from the photograph. (N.T. 36). Meanwhile, Officer Hannaford checked the alleyway behind the building and located the Victim's car keys approximately twenty to thirty feet north of the building yard. (N.T. 36). Upon finding the Victim's keys and allowing the Victim to look through the car, Officer Hannaford also inspected the car. (N.T. 95).

[Appellant] [took the stand and testified in his own defense. Specifically, he] testified…that the incident was related to a drug transaction between himself and the Victim[,] and that he never threatened the Victim with a gun or assaulted the Victim. [Appellant] stated that he and the Victim had been doing business dealings in marijuana for several months [and] he asserted that he received a batch that was "not right" in that it was of "regular" quality whereas he was paying for "Grade A" marijuana. (N.T. 55-57, 79). [Appellant] testified that on December 18, 2015, he contacted the Victim to meet at [Appellant's] apartment in order to purchase three and a half pounds of marijuana. (N.T. 57-58). [Appellant] stated that when they arrived at the apartment, the Victim had a laptop bag full of marijuana. (N.T. 59-60). [Appellant] claimed that he then told the Victim that he would open the laptop bag to inspect the marijuana and that the Victim should go into the bedroom to count the money that was being exchanged for the drugs. (N.T. 60-62). [Appellant] recounted that he then grabbed the laptop full of marijuana and ran out of the apartment and into his car. (N.T. 62-63). [Appellant] presented a cell phone during his testimony with text messages that he alleged were between himself and the Victim regarding their marijuana business dealings, but [Appellant] claimed that after the incident, he broke the SIM card to the phone. (N.T. 64-74, 84-85).

Trial Court Opinion, filed 7/1/19, at 1-3 (footnote omitted) (footnote added).

_____

[2] The Victim testified that he knew Appellant and had first met him in 2009 at the Berks County Prison; he indicated Appellant was aware that he owned a home improvement company and performed renovations in Reading. N.T. at 5-8.

At the conclusion of trial, the trial court convicted Appellant of the offenses indicated *supra*. On that same date, the trial court sentenced Appellant as follows: Count 1, robbery, 6½ years to 15 years in prison; Count 2, conspiracy, 5 years to 10 years in prison, to run concurrently to Count 1; Count 3, possession of a firearm prohibited, 4 years to 10 years in prison, to run consecutively to Count 1; and Count 14, possession of an instrument of crime, 1 year to 5 years in prison, to run consecutively to Count 1 but concurrently to Count 3. No further penalty was imposed for the remaining convictions. Thus, the trial court imposed an aggregate sentence of 10½ years to 25 years in prison; Appellant was provided with his post-sentence and appeal rights.

On or about September 2, 2016, Appellant filed a timely, *pro se* post-sentence motion seeking a new trial.[3] On October 11, 2016, Appellant filed a *pro* se letter asking for the status of his outstanding September 2, 2016, post-sentence motion. On October 14, 2016, the trial court entered an order indicating it was treating the October 11, 2016, *pro se* correspondence as a petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, and on November 1, 2016, the PCRA court appointed new counsel, Lara Glenn Hoffert, Esquire, to assist Appellant.

---

[3] Additionally, on September 6, 2016, Appellant filed a *pro se* motion seeking the modification of his sentence; however, on September 8, 2016, the trial court filed an order indicating it was dismissing this motion.

On November 4, 2016, Attorney Hoffert filed a petition seeking an extension of time to file an amended PCRA petition, and on January 24, 2017, she filed a petition seeking to withdraw her representation due to a conflict of interest. By order entered on January 24, 2017, the PCRA court granted Attorney Hoffert's petition to withdraw, appointed new counsel, Osmer S. Deming, Esquire, to represent Appellant, and gave new counsel thirty days to file an amended PCRA petition.

On February 27, 2017, May 17, 2017, July 24, 2017, and September 28, 2017, Attorney Deming filed petitions seeking an extension of time to file an amended PCRA petition, and each time, the PCRA court granted the request.

On November 27, 2017, Appellant filed a *pro se* letter regarding his outstanding September 2, 2016, post-sentence motion and requesting transcripts in preparation of an appeal.

On December 1, 2017, Attorney Deming filed a motion for re-appointment of counsel, and by order entered on December 1, 2017, the PCRA court granted the request and appointed new counsel, David Long, Esquire, to represent Appellant. On April 23, 2018, Attorney Long filed a petition seeking an extension of time to file an amended PCRA petition, and by order entered on April 24, 2018, the PCRA court granted the request.

On April 25, 2018, and August 6, 2018, Attorney Long filed petitions seeking to withdraw his representation, and each time, the PCRA court denied

the petition. On August 7, 2018, Attorney Long filed a petition seeking an extension of time to file an amended PCRA petition, and the PCRA court granted the request.

On October 9, 2018, Attorney Long filed an amended PCRA petition on behalf of Appellant, and the PCRA court scheduled a PCRA evidentiary hearing for January 17, 2019. On December 8, 2019, privately-retained counsel, Douglas J. Waltman, entered his appearance on behalf of Appellant, and on January 11, 2019, Attorney Waltman filed a motion for a continuance of the PCRA hearing. By order entered on January 10, 2019, the PCRA court granted Attorney Waltman's motion for a continuance.

On February 27, 2019, Attorney Waltman filed an amended PCRA petition, and the PCRA court scheduled a hearing. On May 30, 2019, following an evidentiary hearing, the PCRA court filed an order purporting to grant Appellant relief under the PCRA and indicating that Appellant's direct appeal rights, as well as his post-sentence rights, were reinstated *nunc pro tunc*.

On June 7, 2019, Attorney Waltman filed a post-sentence motion on behalf of Appellant raising a weight of the evidence claim and challenging the discretionary aspects of Appellant's sentence. By order and opinion filed on July 1, 2019, the trial court denied Appellant's counseled post-sentence motion, and this counseled appeal followed on July 25, 2019. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, counsel timely complied, and the trial court filed a brief Pa.R.A.P. 1925(a) opinion.

Initially, before addressing the issues presented on appeal, we first note the trial court erred in treating Appellant's October 11, 2016, *pro se* correspondence as a first petition under the PCRA. "The PCRA provides petitioners with a means of collateral review, but has no applicability until the judgment of sentence becomes final." **Commonwealth v. Kubis**, 808 A.2d 196, 198 n.4 (Pa.Super. 2002). Thus, a "premature petition" filed before the judgment of sentence becomes final "does not constitute a first PCRA petition." **Id.** A judgment of sentence is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

Here, Appellant was sentenced on August 24, 2016, and he filed his timely, *pro se* post-sentence motion nine days later, on September 2, 2016, prior to his judgment of sentence becoming final.[4] **See** Pa.R.Crim.P. 720(a)(1)

_____

[4] We recognize that Appellant filed his timely *pro se* motion at a time when counsel was still attached to his case. *Pro se* filings submitted by counseled defendants are generally treated as legal nullities. **Commonwealth v. Ali**, 608 Pa. 71, 10 A.3d 282 (2010). However, this Court has recognized that a counseled defendant may act on his own to protect important rights where counsel remains technically attached to the case but is no longer serving the client's interest. **See Commonwealth v. Williams**, 151 A.3d 621 (Pa.Super. 2016). Thus, where a defendant has been effectively abandoned, this Court has concluded that a *pro se* filing does not offend considerations of hybrid representation. **See Commonwealth v. Leatherby**, 116 A.3d 73 (Pa.Super. 2015). Here, there is, at the very least, confusion as to whether Appellant was effectively unrepresented when he filed the *pro se* post-sentence motion, and, thus, based on the record before us, we conclude Appellant's *pro se* post-sentence motion does not offend considerations of hybrid representation.

(indicating a written post-sentence motion must be filed within ten days after the imposition of sentence). The trial court never disposed of Appellant's September 2, 2016, *pro se* post-sentence motion for a new trial, and thus, the motion remained pending when Appellant filed his October 11, 2016, *pro se* correspondence (and the subsequent amended counseled PCRA petitions).

Accordingly, we conclude the lower court erred in treating Appellant's October 11, 2016, *pro se* correspondence as a first PCRA petition. Rather, the trial court should have ruled on Appellant's timely, *pro se* September 2, 2016, post-sentence motion. However, inasmuch as the PCRA court purported to grant Appellant collateral relief, we find it unnecessary to vacate the PCRA court's May 30, 2019, order and/or remand for consideration of the September 2, 2016, *pro se* post-sentence motion.

That is, since the PCRA court "reinstated" Appellant's post-sentence and direct appeal rights, and counsel subsequently filed both on behalf of Appellant, we shall overlook the court's procedural breakdowns and address the issues raised by Appellant on appeal.

In his first issue, Appellant contends the trial court erred in imposing consecutive sentences, which resulted in an excessive aggregate sentence without adequate reasons stated to support the sentence.[5] This presents a

---

[5] Appellant contends he is not challenging his individual sentences.

challenge to the discretionary aspects of Appellant's sentence. ***See***

***Commonwealth v. Dunphy***, 20 A.3d 1215 (Pa.Super. 2011).

"[C]hallenges to the discretionary aspects of sentencing do not entitle

an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987,

991 (Pa.Super. 2016) (citation omitted). Rather, before reaching the merits

of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

***Commonwealth v. Corley***, 31 A.3d 293, 296 (Pa.Super. 2011) (citation

omitted). Here, assuming, *arguendo*, all of these requirements have been

met, we conclude Appellant's sentencing issue is meritless.

Our standard of review concerning the discretionary aspects of

sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hyland***, 875 A.2d 1175, 1184 (Pa.Super. 2005).

Pursuant to Section 9721(b), "the court shall follow the general principle

that the sentence imposed should call for confinement that is consistent with

the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question...." ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa.Super. 2010). Rather, the record as a whole must reflect the sentencing court's consideration of the facts of the case and the defendant's character. *Id.* "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Commonwealth v. Griffin,*** 804 A.2d 1, 10 (Pa.Super. 2002).

Instantly, the court had the benefit of a PSI report at sentencing.[6] N.T., 8/24/16, at 2. Therefore, we can presume the court considered the relevant factors when sentencing Appellant. ***See Commonwealth v. Tirado***, 870 A.2d 362 (Pa.Super. 2005) (stating where sentencing court had benefit of PSI, law presumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors).

---

[6] The trial court noted the PSI report had been prepared a few months prior to the instant sentencing hearing. N.T., 8/24/16, at 2. Defense counsel did not object to the trial court relying upon the PSI report. *Id.*

Moreover, in imposing sentence, the sentencing court judge, who also sat for Appellant's bench trial, specifically indicated the following: "All right. I have reviewed the PSI. I have taken into account the testimony that I have heard. I've taken into account the provisions of the Sentencing Guidelines, the information provided by both counsel, [and] the recommendations of both counsel."[7] N.T., 8/24/16, at 5. Further, the trial court noted in its opinion that, given the fact Appellant was convicted of numerous crimes, the imposition of consecutive sentences in this case did not render the sentence unduly excessive. Trial Court Opinion, filed 7/1/19, at 5-6. In light of the aforementioned, we find no merit to Appellant's challenge to the discretionary aspects of his sentence.

In his second issue, Appellant contends the trial court's verdicts are against the weight of the evidence.[8] Specifically, Appellant contends "his testimony clearly outweighs the testimony of [the Victim]," who offered "blatant lies[.]" Appellant's Brief at 17-18. Appellant contends his version of events was "at least plausible" while [the Victim's] story is absurd and plainly fabricated[.]" *Id.* at 21. In this vein, Appellant contends there is "[n]o doubt [the Victim] was at least the victim of a theft of his drugs, as [A]ppellant

---

[7] Defense counsel asked for concurrent sentences in his recommendation to the court.

[8] Appellant adequately preserved his challenge to the weight of the evidence. *See* Pa.R.Crim.P. 607(a); Pa.R.A.P. 1925.

himself admits to, but his lame story about [A]ppellant demanding to know where 'the money' was and robbing him at gunpoint is obviously an attempt to conceal his drug dealing activities." *Id.* at 17.

When considering challenges to the weight of the evidence, we apply the following precepts: "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 545.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, in rejecting Appellant's weight of the evidence claim, the trial court relevantly indicated the following:

> At the bench trial, the court heard testimony from the Victim and from [Appellant] regarding the incident. Testimony from the parties was obviously conflicting and the court was free to make its credibility determinations based upon its observation and experience. Furthermore, [Appellant's] presentation of certain text messages from his cell phone were unconvincing in support of his testimony. We find [Appellant's] claim that the verdicts were against the weight of the evidence to lack merit.

Trial Court Opinion, filed 7/1/19, at 7 (citation omitted).

Appellant requests that we re-weigh the evidence and assess the credibility of his testimony and the Victim's testimony, a task that is beyond our scope of review. As the trial court indicated, it, as the finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial. *Id.*; *Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). As the trial court suggested, in the case *sub judice*, the trial court observed Appellant and the Victim in court, as well as reviewed all of the evidence presented. The trial court, as finder of fact, was free to weigh the evidence and determine whether Appellant committed the crimes as described by the Victim. *See Collins*, *supra*. Therefore, we conclude the

trial court did not abuse its discretion in rejecting Appellant's weight of the evidence claim, and, thus, Appellant is not entitled to relief on this claim. ***See***

***Talbert***, ***supra***.

For all of the aforementioned reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/24/2019</u>