**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA TORRES-PLAZA | : | |
| | : | |
| Appellant | : | No. 1810 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000848-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA TORRES-PLAZA | : | |
| | : | |
| Appellant | : | No. 1811 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000849-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA TORRES-PLAZA | : | |
| | : | |
| Appellant | : | No. 1812 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000850-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

                                        :
          v.                            :
                                        :
                                        :
                                        :
     JOSHUA TORRES-PLAZA                :
                                        :
                Appellant              :      No. 1813 EDA 2019

Appeal from the Judgment of Sentence Entered February 7, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
              No(s):  CP-51-CR-0000851-2018

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 31, 2020**

Appellant, Joshua Torres-Plaza, appeals from the February 7, 2019, judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction by a jury on one count of attempted murder and aggravated assault[1] as to Kevin Neibauer (docketed at CP-51-CR-0000848-2018), one count of simple assault and recklessly endangering another person[2] as to Tene Bennett (docketed at CP-51-CR-0000849-2018), one count of attempted murder and aggravated assault[3] as to Marisela Rodriguez (docketed at CP-51-CR-0000850-2018), and one count of first-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901 and 2701, respectively.

[2] 18 Pa.C.S.A. §§ 2701 and 2705, respectively.

[3] 18 Pa.C.S.A. §§ 901 and 2702, respectively.

degree murder and various firearm offenses[4] as to Carlos Rodriguez (docketed

at CP-51-CR-0000851-2018). After a careful review, we affirm.

The relevant facts and procedural history are as follows: Following a

shooting spree that began outside of a bar, Appellant was charged with

separate offenses at four lower court docket numbers. The trial court

consolidated the cases, and Appellant, represented by counsel, proceeded to

a jury trial. The trial court has aptly summarized the witnesses and evidence

offered at trial as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia police officers Clyde Frasier, John Yeager, Michael James[,] and Lawrence Flagler, Philadelphia police sergeant William Giulian, Philadelphia police detective John Bartol, Philadelphia deputy chief medical examiner Dr. Albert Chu, [as well as] Wilson Vargas, Marisela Rodriguez, Kevin Neibauer, Jackie Neibauer[,] and Tene Bennett. [Appellant] presented the character testimony of Valerie Santiago and Rafael Torres. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> On October 24, 2017, at 10:24 p.m, [Appellant] arrived at the Pink Panther Bar at 301 East Allegheny Avenue in Philadelphia. *See* N.T. 2/5/2019 at 49-50, 56; N.T. 2/6/2019 at 184[.] [Appellant] spent several hours at the bar and, throughout the course of the night, ordered two or three beer buckets containing six beers each, which he shared with the DJ at the bar. N.T. 2/5/2019 at 141-43. At some point, the decedent, Carlos Rodriguez [("Carlos")], arrived at the bar. [*Id.*] at 58, 61. Later in the night, Wilson Vargas [("Vargas")], who was the owner of the bar, was informed that [Appellant] and Carlos were walking around the tables and bothering people. [*Id.*] at 50, 56-58. In response, Vargas approached [Appellant] and Carlos and asked

---

[4] 18 Pa.C.S.A. § 2502. The firearm offenses included carrying a firearm without a license, 18 Pa.C.S.A. § 6106, carrying a firearm on a public street in Philadelphia, 18 Pa.C.S.A. § 6108, and possessing an instrument of crime, 18 Pa.C.S.A. § 907.

them what was going on. [*Id.*] at 57-58. Carlos appeared to be heavily intoxicated, but [Appellant] assured Vargas that [Appellant] was not drunk and that there was no problem at all. [*Id*] at 58-59. Eventually, between 15 and 20 minutes before the bar closed at 2:00 a.m., Vargas told [Appellant] and Carlos that they needed to leave. [*Id.*] at 60. [Appellant] started walking towards the door to leave, but Carlos did not follow. [*Id.*] Now near the exit, [Appellant] called several times for Carlos to follow him and urged him to leave. [*Id.*] at 61-62. Eventually, Carlos walked to the door[,] and he and [Appellant] started to leave the bar. [*Id.*] at 62-64. As they were leaving, Vargas told Marisela Rodriguez, who was Vargas's sister and a server at the bar, to make sure the door was closed after [Appellant] and Carlos left. [*Id.*] at 64-65. Marisela followed [Appellant] and Carlos outside. [*Id.*] at 147-48. Seconds after they exited the bar, [Appellant] pulled out a gun and shot Carlos in the chest from a very close range. [*Id.*] at 67, 148-49; N.T. 2/6/2019 at 159-61. [Appellant] then shot Marisela twice. After being shot, Marisela rushed back inside the bar. N.T. 2/5/2019 at 150-51. [Appellant] then stood over Carlos, who was now on the ground, and pulled the trigger of his gun, but his gun did not fire. *See* N.T. 2/6/2019 at 118-19[.]

Marisela was rushed to the hospital where, after extensive surgery, she recovered from gunshot wounds to her stomach and colon. N.T. 2/5/2019 at 102-03, 158-61. Carlos, on the other hand, was pronounced dead shortly after being shot. [*Id.*] at 187-88, 192. The medical examiner determined that the cause of death was a gunshot wound to the chest. N.T. 2/6/2019 at 153.

After shooting Carlos and Marisela, [Appellant] entered his car and began to flee, but he did not get far. Instead, [Appellant] crashed his vehicle into a light pole and the steps of a home on the corner of B and Westmoreland Streets, which is just one block north of the Pink Panther Bar. N.T. 2/5/2019 at 10-11, 30, 43, 211. Hearing the sound of a car crash from inside their home, Kevin Neibauer [("Mr. Neibauer")] and his wife, Jacqueline Neibauer [("Mrs. Neibauer")], went outside to see if anyone was injured. N.T. 2/6/2019 at 16-17, 51-52. Mr. Neibauer saw [Appellant] in the front seat of the crashed vehicle and asked [Appellant] if he was alright, to which [Appellant] said yes. [*Id.*] at 20. While Mr. Neibauer called 9-1-1- to get help for [Appellant], [Appellant] exited the vehicle, removed the license plate from the rear of the vehicle, and put the license plate down his pants. [*Id.*] at 20, 22, 56, 59. [Appellant] asked Mr. Neibauer if he had called

the police and, after Mr. Neibauer said that he did, [Appellant] shook his head and thanked him. [*Id.*] at 22. Immediately after, [Appellant] shot Mr. Neibauer in the left side of the neck. [*Id.*] at 22, 24, 62. The bullet fractured Mr. Neibauer's jaw, nose and orbital bone, and exited his forehead. [*Id.*] at 28-29. He survived, albeit with blindness in one eye and permanent hearing loss. [*Id.*] at 30-32.

After shooting Mr. Neibauer[,] [Appellant] fled on foot. [*Id.*] at 62-63. [Appellant] made his way to the area around B and Clearfield Streets where Tene Bennett [("Bennett")] was smoking a cigarette outside. [*Id.*] at 131, 134. [Appellant] walked up to Bennett, pulled out his gun, and held it to Bennett's head as he asked her, "did you see me?" and "do you want to go home?" [*Id.*] at 135-36. Then [Appellant] pulled the trigger, but his gun did not fire. [*Id.*] at 136-37. After [Appellant's] gun failed to fire, Bennett ran away and was later able to find the police to report what had just happened. [*Id.*] at 138-39.

After receiving a description of [Appellant] from Mrs. Neibauer, officers patrolled the area searching for [Appellant]. N.T. 2/5/2019 at 218-19, 222. Officers Michael James and Edward Taylor eventually spotted [Appellant] on the 200 block of East Clearfield Street attempting to unlock a vehicle with a key. [*Id.*] at 211, 223. Officer Taylor ordered [Appellant] to show his hands[;] but instead, [Appellant] took off running. [*Id.*] at 223-25. As [Appellant] began to flee, he discarded his gun on the hood of the vehicle he was attempting to get into. [*Id.*] at 225, 227. Officer Taylor chased after [Appellant][,] and [he] eventually was able to subdue him and place him under arrest. [*Id.*] at 225-26.

Trial Court Opinion, filed 9/20/19, at 3-5 (footnote and some citations to record omitted).

At the conclusion of all testimony and evidence, the jury convicted Appellant of the offenses indicated *supra*, and on February 7, 2019, the trial court imposed a sentence of life in prison for the first-degree murder of Carlos. The trial court additionally imposed an aggregate sentence of forty years to

eighty years in prison with regard to Appellant's convictions as to the remaining victims.

On February 13, 2019, Appellant filed a timely, counseled post-sentence motion at each lower court docket number, and on June 13, 2019, the trial court denied the post-sentence motion. On June 18, 2019, Appellant filed a timely, counseled appeal at each lower court docket number, and this Court *sua sponte* consolidated the appeals. All Pa.R.A.P. 1925 requirements have been sufficiently met.[5]

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

   I.   Was defendant's conviction for first degree murder against the weight of the evidence since the evidence clearly established that the killing in question occurred when defendant was highly intoxicated?

   II.  Was the evidence insufficient to sustain defendant's convictions since defendant's intoxication rendered him incapable of forming the specific intent to kill?

---

[5] On June 26, 2019, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days of the entry of the order. On July 18, 2019, one day late, counsel filed a Rule 1925(b) statement on behalf of Appellant. Nevertheless, in its Rule 1925(a) opinion, the trial court addressed the merits of the issues raised in the untimely Rule 1925(b) statement. Accordingly, we shall overlook the untimely nature of the counseled Rule 1925(b) statement and proceed to a review of the issues raised on appeal. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009) (*en banc*) (holding counsel's failure to file a timely Pa.R.A.P. 1925(b) statement constitutes ineffectiveness *per se* and where the trial court addresses the issues in its opinion this Court may overlook the untimeliness without remanding the matter to the lower court).

Appellant's Brief at 3 (suggested answers omitted).

Initially, we shall address Appellant's second issue in which he challenges the sufficiency of the evidence supporting his conviction for first-degree murder.[6] Specifically, Appellant contends the evidence reveals that he was unable to form the specific intent to kill because he was overwhelmed by alcohol to the point he lost his faculties at the time he shot Carlos. Accordingly, Appellant suggests that, at most, he was guilty of third-degree murder as opposed to first-degree murder.

Our standard of review is well settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our prior judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the

_____

[6] We note "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa.Super. 2014) (citation omitted). Accordingly, we shall initially determine whether the evidence is sufficient to sustain Appellant's first-degree murder conviction, and if so, then examine Appellant's weight of the evidence claim.

- 7 -

weight of the evidence produced[,] is free to believe all, part or none of the evidence.

***Commonwealth v. Talbert***, 129 A.3d 536, 542–43 (Pa.Super. 2015) (citation omitted).

"Evidence is sufficient to sustain a conviction of first-degree murder where the Commonwealth establishes[, beyond a reasonable doubt,] that: (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." ***Commonwealth v. Haney***, 634 Pa. 690, 131 A.3d 24, 33 (2015). "A specific intent to kill may be proved by wholly circumstantial evidence and may be inferred by the defendant's use of a weapon on a vital part of the victim's body." ***Commonwealth v. Miller***, 897 A.2d 1281, 1285 (Pa.Super. 2006).

With respect to the diminished capacity defense to first-degree murder, our Supreme Court has explained:

> A diminished capacity defense does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent. For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. ***Commonwealth v. Spotz***, 587 Pa. 1, 896 A.2d 1191, 1218 (2006). The mere fact of intoxication does not give rise to a diminished capacity defense. ***Spotz***, ***supra***. ***See*** ***Commonwealth v. Blakeney***, 596 Pa. 510, 946 A.2d 645, 653 (2008) (requiring that a defendant show that he was "overwhelmed to the point of losing his faculties and sensibilities" to prove a voluntary intoxication defense). Evidence that the defendant lacked the ability to control his or her actions or acted

impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense.

***Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 312 (2011) (citations, quotation marks, and quotations omitted).

Generally speaking, "[n]either voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge." 18 Pa.C.S.A. § 308. However, as our Supreme Court has explained: "[e]vidence of substantial intoxication…[, i]f believed,…may negate the intent to kill necessary for a conviction of murder in the first degree[.]" ***Commonwealth v. Rose***, 463 Pa. 264, 344 A.2d 824, 826 (1975).

In the case *sub judice*, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence reveals Carlos was unlawfully killed and Appellant is responsible for the killing. ***Haney***, ***supra***. Moreover, Appellant's specific intent to kill may be inferred from the fact he fired a bullet into Carlos's chest from a very close range. ***Miller***, ***supra***.

With regard to Appellant's diminished capacity (voluntary intoxication) defense, the trial court relevantly indicated the following:

> Here, there was ample evidence to support the decision of the jury to reject the voluntary intoxication defense and find that [Appellant] acted with specific intent to kill. First, there was substantial evidence that [Appellant] was not heavily intoxicated at the time of the murder. While Marisela Rodriguez, who was [Appellant's] server while he was at the Pink Panther Bar, testified [Appellant] ordered two or three beer buckets containing six beers each, he shared the beer with the DJ at the bar. N.T. 2/5/2019 at 141-43. Moreover, [Appellant] consumed this alcohol in the span of approximately 3 to 3½ hours between 10:30 p.m., when he arrived at the bar, and shortly before the bar closed at 2:00

a.m., when he left. [*Id.*] at 60; N.T. 2/6/2019 at 184. In addition, a blood test taken nearly 14 hours after the shooting indicated no presence of alcohol in [Appellant's] blood. *See* N.T. 2/6/2019 at 220. While the parties stipulated that the blood test showed the presence of cocaine, there was no expert testimony, nor any other evidence, offered to suggest that [Appellant] could have been intoxicated from that quantity of cocaine….

In addition, Wilson Vargas, the owner of the bar, testified that when he spoke with [Appellant] and the decedent to determine if they needed to leave the bar, [Appellant] informed him that he was not drunk and, therefore, did not need to leave the bar. N.T. 2/5/2019 at 59. According to Vargas, when he finally told [Appellant] and the decedent that they needed to leave the bar, [Appellant] cooperated and started to leave. [*Id.*] at 60. Additionally, Marisela testified that [Appellant] seemed normal and that[,] although he had consumed several beers throughout the night, he did not seem heavily intoxicated and she had no issues communicating with him. [*Id.*] at 145-46.

[Appellant's] actions after shooting both the decedent and Marisela also demonstrated that [Appellant] did not lack his faculties and sensibilities from intoxication, but instead, that [Appellant] understood what he had just done and that he needed to flee….Although [Appellant] crashed his vehicle approximately one block away from the bar, surveillance footage showed that [Appellant] used his turn signal when he turned at the intersection of B and Westmoreland Streets. [*Id.*] at 10; N.T. 2/6/2019 at 185-86. Further, Kevin Neibauer, who interacted with [Appellant] after [Appellant] crashed his car, testified that [Appellant] shook his hand and thanked him for calling the police for help just moments before [Appellant] shot him in the side of the neck. N.T. 2/6/2019 at 22. Jacqueline Neibauer testified that she saw [Appellant] remove the license place from the rear of the vehicle and put the license plate down his pants. [*Id.*] at 56, 59. By removing the license plate from the get-away car after the accident, and shooting Mr. Neibauer, [Appellant] demonstrated that he was able to purposefully take steps to prevent himself from being apprehended for the murder. These actions were inconsistent with being so intoxicated that he had lost his faculties and sensibilities.

The evidence also established that after shooting Mr. Neibauer [Appellant] continued his deliberate efforts to conceal himself and flee. Tene Bennett testified that[,] in the area around B and Clearfield Streets, [Appellant] approached her, held a gun

to her head, and asked her, "did you see me?" and "do you want to go home?" [***Id.***] at 135-36.  According to Bennett, [Appellant] pulled the trigger of the gun but the gun again failed to fire, and she was able to escape.  [***Id.***] at 136-39.  Officer Michael James testified that he and his partner, Officer Edward Taylor, spotted [Appellant] on the 200 block of East Clearfield Street attempting to unlock a vehicle with a key.  N.T. 2/5/2019 at 211, 223.  Officer James further testified that when Officer Taylor ordered [Appellant] to show his hands, [Appellant] discarded his gun on the hood of the vehicle he was attempting to get into and began to flee.  [***Id.***] at 223-25.  According to Officer James, he and his partner were finally able to apprehend [Appellant] and end his crime spree.  [***Id.***] at 225-26.  All of this was compelling evidence that [Appellant] was not overwhelmed by intoxication.

***

[Furthermore,] after shooting the decedent, [Appellant] shot the only eyewitness to the shooting, Marisela.  [***Id.***] at 150.

Trial Court Opinion, filed 9/20/19, at 7-10 (some citations to record omitted).

We agree with the trial court's sound reasoning, and under the appropriate standard of review, the evidence does not reveal that Appellant was so intoxicated that he was overwhelmed to the point of losing his faculties and sensibilities.  ***Hutchinson***, ***supra***.  Appellant does nothing more than present the fact of intoxication as evidence that he lacked the specific intent to commit first-degree murder.  However, "the mere fact of intoxication is not sufficient to support a diminished capacity defense."  ***Id.*** at 313 (citations omitted).  Thus, there is no merit to Appellant's sufficiency of the evidence claim.

- 11 -

Appellant next argues the jury's verdict convicting Appellant of first-degree murder is against the weight of the evidence.[7] Specifically, Appellant argues the jury's finding that he had the specific intent to kill Carlos shocks one's sense of justice in light of the evidence Appellant was intoxicated and incoherent. In this vein, Appellant contends he "was so intoxicated that he was incapable of negotiat[ing] a simple left-hand turn while driving and was running into stop signs while walking." Appellant's Brief at 10.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

_____

[7] Appellant adequately preserved his weight of the evidence claim in the lower court. *See* Pa.R.Crim.P. 607.

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim, and we find no abuse of discretion in this regard. *Talbert*, *supra*. We note the jury was free to determine the weight and inferences to be drawn from Appellant's failure to negotiate a left-hand turn while driving, as well as his running into stop signs while walking. To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so as it is a task that is beyond our scope of review. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/31/20</u>