J-S03021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON NIVAL | : | |
| | : | |
| Appellant | : | No. 1027 MDA 2025 |

Appeal from the Judgment of Sentence Entered July 14, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003579-2023

BEFORE:  DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.:                    **FILED: MAY 4, 2026**

Jason Nival ("Nival") appeals from the judgment of sentence imposed by the Berks County Court of Common Pleas ("trial court") following his convictions of third-degree murder, aggravated assault, conspiracy to commit third-degree murder, conspiracy to commit aggravated assault, possessing instruments of crime ("PIC"), and recklessly endangering another person.[1] On appeal, Nival challenges the weight of the evidence supporting his convictions. Because we conclude that the trial court did not abuse its discretion in rejecting Nival's weight of the evidence claim, we affirm.

On January 18, 2023, Eric Ferrer ("Ferrer") and Emilio Reguero ("Reguero") returned to Ferrer's apartment in Washington Towers, located on

---

[1] 18 Pa.C.S. §§ 2502(c), 2702(a)(1), 903(a), 907(a), 2705.

the 300 block of Washington Street, in Ferrer's vehicle. N.T., 2/4/2025, at 128-29. As they turned onto Washington Street and approached the entrance to the Washington Towers parking garage, they observed three men crossing the street. *Id.* at 130. Ferrer hesitated and allowed the men to cross before proceeding toward the garage entrance. *Id.* As the three men advanced in the direction of the parking garage, they opened fire at Ferrer's vehicle, discharging ten rounds. *Id.* at 131, 190. Ferrer managed to drive into the garage but ultimately died from a gunshot wound to the chest. *Id.* at 135.

When law enforcement arrived at the scene, officers initially interviewed Reguero, who provided a brief description of two of the assailants based on his limited observation of the men as they passed the vehicle. *Id.* at 131, 132. Upon further investigation, the officers recovered ten shell casings, nine located near the entrance to the parking garage and the last found down the street in front of an A-Plus Minimart, all of which were collected and sent to the crimes lab for testing. *Id.* at 170, 188, 190-92. Jessica Kennedy ("Kennedy"), the firearms examiner of the Berks County District Attorney Laboratory, testified that three different guns were used to fire the ten projectiles found near the scene of the crime. *Id.* at 252-254. As an expert in firearms identification, Kennedy explained that five of the cartridge cases were fired from two separate 9 mm pistols and the other five casings were fired from a .40 caliber pistol. *Id.* at 244, 249. An autopsy conducted by an expert in forensic pathology determined Ferrer's cause of death to be a

gunshot wound to the chest and classified his manner of death as a homicide. *Id.* at 228-29.

As law enforcement continued to canvas the area, the officers encountered a couple who reported seeing three men run from the scene immediately following the shooting, with two entering a nearby residential building located at 325 Washington Street. *Id.* at 160-63. As a result of inconsistencies in other eyewitness reports, however, the officers lacked sufficient identification to justify making a forced entry into the residential building, and despite multiple attempts, the officers were unable to contact anyone inside. *Id.* at 163.

Subsequently, they obtained surveillance footage from nearby businesses, residences, and police cameras. *Id.* at 263. The footage showed three individuals, later identified as Nival and his brothers, exiting Nival's home at 325 Washington Street, moving toward the Washington Towers parking garage prior to the shooting, and running from the scene immediately thereafter. *Id.* at 274-76, 288. One of the videos depicted an individual wearing a black sweatshirt and tan pants, carrying a satchel and holding a firearm. *Id.* at 289. Police identified that individual as Nival based on A-Plus Minimart security footage recorded a day prior to the shooting that showed Nival making a purchase while wearing the same outfit. *Id.* at 326-330. Using the store receipt, law enforcement traced the credit card used in the transaction and confirmed Nival's identity. *Id.* at 331-34.

The police eventually obtained a search warrant for the phone records of Nival and his brothers. *Id.* at 467. According to an expert in cell site analysis and geolocation data, the phone records revealed that the three men came together at Nival's home shortly before the shooting, were present on Washington Street during the murder, and dispersed from area after the shooting. *Id.* Police obtained a warrant for Nival's arrest, locating him in Texas, from which he was extradited to Pennsylvania to face charges associated with the shooting. *Id.* at 426-28.

The Commonwealth charged Nival with numerous offenses. On February 7, 2025, after a four-day trial, the jury found Nival guilty of the above-listed crimes. At Nival's request, the trial court deferred sentencing to allow him to retain new counsel. Thereafter, Naval filed a post-trial motion for a new trial, arguing that the verdict was against the weight of the evidence. On July 14, 2025, the trial court denied the motion, and the case proceeded to sentencing. Ultimately, the trial court sentenced Nival to an aggregate term of sixteen years and seven months to forty-two years of incarceration followed by ten years of probation. Nival did not file a post-sentence motion, but filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Nival presents the following question for our review:

> Was the verdict against the weight of the evidence when the Commonwealth's evidence, including (1) cell tower geolocation data and cell phone carrier logs, (2) ballistics reports, autopsy evidence and scene photographs, (3) contemporaneous video

footage of the shooting including still shots and [v]ideo [f]ootage of the scene and surrounding area before and after the shooting including still shots, and (4) eyewitness testimony and witness description of the assailants did not establish singularly or collectively [Nival's] involvement in the shooting or in any conspiracy to harm [Ferrer]?

Nival's Brief at 4 (cleaned up).

Nival argues that the jury's verdict was against the weight of the evidence presented at trial, as no evidence offered by the Commonwealth, considered singularly or collectively, established his involvement in the shooting. *Id.* at 10. He contends that the trial court erred in denying his motion for a new trial because the cell phone tower geolocation data, relied upon by the Commonwealth to place each codefendant at the scene of the crime, was insufficient to support the jury's guilty verdict. *Id.* at 10-11. Nival notes that he lived across the street from the Washington Towers parking garage and it is plausible that his brothers were visiting for reasons unrelated to the shooting. *Id.*

Nival further asserts that the ballistics reports, autopsy evidence, and scene photographs did not support his convictions because none of the reports established the Commonwealth's theory that three guns were used in the shooting or his involvement in the crime. *Id.* at 12. According to Nival, the video evidence likewise does not support his conviction, as the footage was blurry and failed to establish anything more than his presence on Washington Street near his home at the time of the shooting. *Id.* at 13.

Additionally, Nival highlights inconsistencies in the eyewitness testimony and witness descriptions presented at trial, arguing that the trial court's reliance on this testimony lends support to his challenge to the weight of the evidence to support his conviction. *Id.* at 13-14. Nival concludes that the verdict rendered in this case was so contrary to the weight of the evidence that it shocks one's sense of justice and necessarily justifies the award of a new trial. *Id.* at 14.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility to the witness and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advance by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

In denying his motion for a new trial, the trial court rejected Nival's weight claim and held that the jury, as the trier of fact, was well within its province to weigh the testimony of each witness and make credibility determinations in support of its unanimous guilty verdict. Trial Court Opinion, 9/9/2025, at 6. The trial court explained that the jury heard vigorous cross-examination as to the reliability and relative limitations of the cell phone geolocation data, given that Nival's residence was located in close proximity to the scene of the crime. *Id.* The jury also heard conflicting evidence from the Commonwealth and defense regarding Nival's involvement in the shooting. *Id.* To the extent that there were inconsistences in the eyewitness reports or concerns regarding the viewability of the video footage, the trial court held that the jury "had the right to weigh the testimony of each witness and determine which evidence it found credible." *Id.* The jury ultimately concluded that the circumstantial evidence presented at trial supported a guilty verdict, and following its review of the record, the trial court found the

verdict did not shock the conscience of the court and that Nival's weight challenge to be meritless. *Id.* at 6-7.

We find no abuse of discretion in the trial court's determination. At base, Nival's argument is that there was no direct evidence establishing his guilt. *See* Nival's Brief at 10 ("The Commonwealth did not enter any other inculpatory evidence into the record such as admissions, clothing, DNA, fingerprint, firearm, lineup, or photo array or wiretap evidence."). The law is clear, however, that "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A. 3d 632, 640 (Pa. Super. 2017) (citation omitted); *see also Commonwealth v. Stafford*, 194 A.3d 168, 176 (Pa. Super. 2018) (stating a defendant may be identified as the perpetrator based on circumstantial evidence).

The Commonwealth presented expert testimony establishing that three firearms were used in the shooting, that Nival and his two brothers were in close proximity to the parking garage at the time that the crime occurred, and that Ferrer's cause of death was a gunshot wound to the chest. Extensive surveillance footage, viewed by the trial court and the jury, showed Nival was

at the scene holding a firearm at the time of the shooting.[2]  Although Nival contends that inconsistencies in witness testimony and concerns regarding the credibility of certain evidence render his convictions unsound, it was the job of the jury to resolve these questions.  *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019) (noting that the jury is the factfinder and the sole arbiter of witness credibility).  Nival's version of events and evidentiary explanations were presented to the jury, which it disbelieved.

Simply put, the jury heard all the testimony, weighed it, and rendered the guilty verdict.  Nival essentially asks us to reweigh and reassess the evidence in his favor, which this Court is not empowered to do.  *See Commonwealth v. Gilliam*, 294 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of the factfinder and reweigh the evidence in his favor).  It is well settled that we may not substitute our judgment for that of the factfinder.  *See Commonwealth v. Collins,* 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating

---

[2]  Nival's claim that the video quality was so poor that it failed to establish his participation in the shooting is not reviewable on appeal as the video was not included in the certified record.  "Although the clerks of courts are responsible for maintaining and transmitting records in cases, it ultimately is the duty of the appellant to ensure that the certified record is complete.  The appellant's failure to carry out that duty results in waiver of any claim for which a needed item is absent from the certified record."  *Commonwealth v. Midgley*, 289 A.3d 1111, 1120 (Pa. Super. 2023) (citations omitted).  As such, this argument is waived.

that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted).

The trial court properly exercised its discretion in determining that the verdict was supported by the circumstantial evidence presented, which established Nival's involvement in the shooting, and thus did not shock the conscience of the court. As his weight challenge is the sole issue Nival presents for our review, he is not entitled to relief.[3]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/4/2026

---

[3] Nival initially raised a second claim related to statements made during the Commonwealth's closing argument, but he concedes that because counsel failed to object at trial, this claim must await collateral review. *See* Nival's brief at 14.